**HARDY SALT COMPANY, Appellant,**
v.
**STATE OF ILLINOIS et al., Appellees.**

**HARDY SALT COMPANY, Appellant,**
v.
**STATE OF WEST VIRGINIA et al., Appellees.**

**Nos. 18702, 18703.**

United States Court of Appeals
Eighth Circuit.

May 22, 1967.

F. Wm. McCalpin, of Lewis Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant.

Lee A. Freeman, of McConnell, Freeman, Curtis & McConnell, Chicago, Ill., for appellees.

Before MATTHES, BLACKMUN and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

These are interlocutory appeals under 28 U.S.C. § 1292(b) to review an order of the district court holding that the four-year statute of limitations applicable to private antitrust treble damage actions under Section 4B of the Clayton Act was tolled under Section 5(b) of that Act,[1] as to Hardy Salt Company by rea-

1. Section 5(b) of the Clayton Act, 38 Stat. 731 (1914), as amended, 15 U.S.C. § 16 (b) (1963), provides:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every

son of the pendency of government litigation against other members of the salt industry. The sole question for determination here is whether the tolling provision of Section 5(b) of the Clayton Act, which suspends the running of the statute of limitations during the pendency of government antitrust proceedings, and for one year thereafter, tolls the statute as to a party named as a co-conspirator, but not as a defendant, in the government litigation. The district court held in favor of the plaintiffs, appellees herein, and Hardy Salt Company duly prosecuted its appeal. The denial of appellant's motions to dismiss was premised on the court's opinion reported at 259 F.Supp. 35 (D.Minn.1966).

These private antitrust actions emanate from civil and criminal proceedings instituted by the government to punish and restrain a conspiracy among rock salt producers and distributors to fix prices of rock salt sold to various state and municipal agencies. The indictment, filed June 28, 1961, and the government civil action, filed July 11, 1961, named as defendants Morton Salt Company, Diamond Crystal Salt Company, International Salt Company and Carey Salt Company. Named as co-conspirators, but not as defendants in the government proceedings, were five other companies, including appellant, Hardy Salt Company.[2]

A jury trial in the criminal case resulted in an acquittal of the three litigating defendants on June 7, 1962. The government civil suit, however, terminated in a judgment against Morton and Diamond, which was affirmed on appeal to the Supreme Court on October 25, 1965. Morton Salt Co. v. United States, 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 (1965). On August 23, 1966, subsequent to the filing of Judge Larson's opinion on July 28, 1966, but within one year of the Supreme Court's decision in *Morton Salt*, appellees filed their respective actions against appellant, Hardy.

On the basis of the foregoing facts, the district court determined:

1. That the four-year statute of limitations applicable to plaintiffs' actions commenced to toll under Section 5(b) on June 28, 1961, the date on which the government initiated the criminal action against certain named defendants.

2. The tolling of the statute of limitations terminated under Section 5(b) on October 25, 1966, one year after the cessation date of all government litigation.

3. Section 5(b) applies to all defendants named in the private treble damage actions although they were not named as defendants in the government litigation.

4. The matters complained of in plaintiffs' treble damage actions are based in whole or in part on the government proceedings within the meaning of Section 5(b).

Inasmuch as appellees' causes of action against Hardy were not filed until August 23, 1966, all of their claims will be barred by the four-year statute of limitations, unless that limitation period was suspended during the pendency of the government litigation, and for one year thereafter. For the reasons set forth below, we sustain the district court's determination and affirm.

---

private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under Section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

2. A number of the defendants in the private antitrust actions prosecuted appeals from various adverse rulings of the district court. After the cases had reached this Court, however, all of the appeals were dismissed by consent of the parties, except the two here under consideration.

Appellant advances several arguments in support of its position that Section 5(b) does not serve to toll the statute of limitations as to persons who were not defendants in the government litigation.

(1) The district court's ruling is contrary to a long line of decisions holding that the tolling provision of Section 5(b) does not apply to non-government defendants;

(2) The district court's decision is inconsistent with the legislative history of the tolling provision;

(3) The Supreme Court's interpretations of Section 5(b), as announced in Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co. (3M), 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965), and Leh v. General Petroleum Corp. (Leh), 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965), do not warrant the conclusions reached by the district court;

(4) The construction of the statute by the district court would create confusion, uncertainty and unfairness regarding the rights of non-parties to the government litigation.

The district court carefully considered and rejected appellant's contentions. The court concluded that although the Supreme Court had not "explicitly passed upon the question raised here, the broad interpretation given § 5(b) in *Leh* and *3M* suggests that the Supreme Court would hold that it tolls the statute on a cause of action asserted against a non-Government defendant; * * *" 259 F.Supp. at 53–54.

Appellant strenuously contends that the issue before this Court has been decided adversely to the conclusion of the district court by a uniform line of prior decisions.[3] All but two of these decisions are the outgrowth of prior government actions against certain producers and distributors in the movie industry. We agree with appellant that the holdings of these cases or the dicta therein are contrary to the position taken by Judge Larson and support the proposition that the tolling provision of Section 5(b) is inapplicable to parties who were not defendants in the government antitrust litigation. Despite this contrariety, however, we do not deem them to be controlling precedents in light of the *3M* and *Leh* decisions.

Each of appellant's movie theater cases was decided under Section 5 of the Clayton Act, the progeny of the present day Sections 5(a) and 5(b).[4] It is apparent, however, that these decisions construed the tolling provision of the second paragraph of Section 5 [the present Section 5(b)] as coextensive with the collateral

3. We are cited to our opinion in Columbia Pictures Corp. v. Charles Rubenstein, Inc., 289 F.2d 418 (8th Cir. 1961), affirming, 176 F.Supp. 527 (D.Minn.1959) and 154 F.Supp. 216, 218–219 (D.Minn. 1957). Contrary to appellant's intimation, however, we did not reach the suspension issue as to non-government defendants in the Rubenstein case. Appellant, however, cites several other Court of Appeals and District Court decisions as directly or inferentially supporting a result contrary to that reached by the district court. See, e. g., Sun Theatre Corp. v. RKO Radio Pictures, Inc., 213 F.2d 284, 291–292 (7th Cir. 1954); Court Degraw Theatre, Inc., v. Loew's Inc., 172 F.Supp. 198, 200 (E.D.N.Y.1959); Electric Theater Co. v. Twentieth Century-Fox Film Corp., 113 F.Supp. 937, 945 (W.D.Mo.1953); Christensen v. Paramount Pictures, Inc., 95 F.Supp. 446, 454–455 (D.Utah 1951).

4. Section 5 of the Clayton Act of 1914, 38 Stat. 731, provided:

"That a final judgment or decree hereafter rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto; *Provided,* This section shall not apply to consent judgments or decrees entered before any testimony has been taken; *Provided further,* This section shall not apply to consent judgments or decrees rendered in criminal proceedings or suits in equity, now pending, in which the taking of testimony has

estoppel principles applicable to the first paragraph of Section 5 [the present Section 5(a)], which gave prima facie effect to a final judgment or decree in the government proceeding against named defendants in that litigation. The tolling provision of that Section, as to private rights of action based in whole or in part on matters at issue in the government proceeding, was construed as having no greater reach than the evidentiary provisions of Section 5, and was not extended to protect other benefits accruing from related government proceedings. See, e. g., Charles Rubenstein, Inc. v. Columbia Pictures Corp., supra, 154 F.Supp. at 218–219.

Typical of this judicial engrafting is Sun Theatre Corp. v. RKO Radio Pictures, supra, where the court circumscribed the scope of Section 5 in light of evidentiary features of that Section:

"* * * Neither logic nor public policy considerations demand, or even permit, us to say that the pendency of a government antitrust suit operates to suspend the running of the statute [the Illinois statute of limitations] as to every party who participated, either locally or nationally, in the nationwide combination condemned thereby without regard to whether or not he was named therein as a defendant. Rather, the suspension provisions must be construed in the light of what can be accomplished thereby. Our hypothetical complaint charges and our hypothetical decree finds that A, B, C and D conspired together to eliminate competition on a national scale. The decree is prima facie evidence as to this question only. P [the private antitrust claimant] reaps the full benefit of Section 5 if the statute is suspended as to the parties named. If a different result is de-

sirable, provision for its promulgation is a function of the Congress, not of the Courts."

* * * * * *

"* * * Plaintiff concedes that the two paragraphs of Section 5 are complementary. As previously demonstrated, no public policy considerations require that the tolling provisions be more extensive than the evidentiary provisions which they are designed to protect * * *." 213 F.2d at 291–292.

In summary, we can fairly conclude that all of the decisions relied upon by appellant were based on the premise, or relied on other decisions or concessions of counsel which in turn were based on the premise, that Sections 5(a) and 5(b) must be construed as coextensive. This basic premise, we believe, has been thoroughly discredited by the *3M* and *Leh.* decisions.

Congress in 1955 amended Section 5 of the Clayton Act by substituting Subsection (a) for the first paragraph of that Section to provide that final judgments or decrees in government actions under the antitrust laws would be prima facie evidence in damage suits by the United States as well as in private damage suits. The second paragraph of that section was further amended by the substitution of Subsection (b) to extend the period of suspension for one year after the pendency of the government suit, and to require a private action to be commenced within that time or within four years after the cause of action had accrued.

Appellant would have us attach no particular significance to the substitution of Subsections 5(a) and 5(b) for Section 5 in view of the fact that Congress made no substantial change in the pertinent statutory language with respect to per-

been commenced but has not been concluded, provided such judgments or decrees are rendered before any further testimony is taken.

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain or punish violations of any of

the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

sons to whom the tolling provision was applicable, notwithstanding a uniform line of authority up to the time of the amendment. Appellant argues that Congress, had it intended to reach a result contrary to these prior decisions, would have explicitly altered the language of Section 5, and in not doing so, implicitly approved the judicial construction given to the tolling provision.

We find nothing in the language of the amendment itself or in its legislative history which evidences such an intention. Congress was concerned primarily with the confusion and discrimination inherent in the use of diverse state statutes of limitation and the undesirability of prolonging private actions by suspending the statute of limitations several years beyond the duration of the government antitrust action. S.Rep.No.619, 84th Cong., 1st Sess. 4–5 (1955); H.R.Rep. No.422, 84th Cong., 1st Sess. 6–7 (1955). See also Christensen v. Paramount Pictures, Inc., supra. Clearly, Congress did not concern itself with the application of the tolling provision of Section 5(b) to parties who had withdrawn prior to the ultimate conclusion of the government litigation or to those defendants who were not named in the government action.

Nothing therefore in the Congressional history of the 1955 amendment impels us to the conclusion that Sections 5(a) and (b) are to be construed as coextensive in their frame of reference. Even prior to the Supreme Court's decisions in *3M* and *Leh*, the Tenth Circuit in Union Carbide and Carbon Corporation v. Nisley, 300 F.2d 561 (10th Cir. 1961), appeal dismissed, 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962), had recognized the fallacy of construing Section 5(b) solely by reference to Section 5(a):

"The corollary purpose of the tolling provisions of the second paragraph of Section 5 is to vouchsafe the intended benefits of related government proceedings by suspending the running of the statute of limitations until the termination of the government proceedings, and allowing the private

suitor one year thereafter in which to prepare and file his suit. The competency of a government judgment in a private suit is necessarily restricted to the requirements of due process. But the tolling of the statute during the pendency of the government litigation is not so limited."

" * * * [W]e do not think the tolling provisions of the second paragraph of Section 5 are confined to or governed by the evidentiary rules of estoppel, necessarily prevalent in the first paragraph." 300 F.2d at 569–570.

*3M*, as appellant correctly observes, did not specifically present the issue of the applicability of Section 5(b) to non-government defendants. The question before the Supreme Court was whether proceedings instituted by the Federal Trade Commission under Section 7 of the Clayton Act tolled the four-year limitation bar under Section 5(b) to the same extent as judicial proceedings, and if so, was the claim of New Jersey Wood Finishing Company, the private plaintiff, "based in whole or in part on any matter complained of" in the government proceeding. One of the arguments advanced with respect to this issue was that the Commission proceedings could not have prima facie evidentiary effect under Section 5(a) and consequently could not toll the statute of limitations under Section 5(b). The Supreme Court explicitly rejected this interpretation, and held that the applicability of Section 5(a) to Federal Trade Commission proceedings would in no way control the question whether those proceedings tolled the statute of limitations under Section 5(b):

"In our view, therefore, the two sections are not necessarily coextensive; they are governed by different considerations as well as congressional policy objectives. This makes § 5(b) readily severable from § 5(a). Even if we assumed *arguendo* that § 5(a) is inapplicable to Commission proceedings —a question upon which we venture no opinion—that conclusion would be immaterial in our consideration of § 5·

(b) and § 4B. Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws. This construction will lend considerable impetus to that policy." 381 U.S. at 318, 85 S.Ct. at 1477, 14 L.Ed. 2d 405.

*3M*, in our view, basically undermines the validity of appellant's theater cases by exposing the reasoning behind them. These courts clearly labored under the now discredited view that the scope of Section 5(b) was to be commensurate with the benefits accruing to a private litigant under Section 5(a). *3M* clearly rejects such a limitation, and indicates that other, perhaps more far-reaching, benefits may inure to the private litigant under Section 5(b):

> "It may be, as Minnesota Mining contends, that when it was enacted the tolling provision was a logical backstop for the prima facie evidence clause of § 5(a). But even though § 5(b) complements § 5(a) in this respect by permitting a litigant to await the outcome of government proceedings and use any judgment or decree rendered therein—a benefit which often is of limited practical value—it is certainly not restricted to that effect. As we have pointed out, the textual distinctions as well as the policy basis of § 5(b) indicate that it was to serve a more comprehensive function in the congressional scheme of things. The Government's initial action may aid the private litigant in a number of other ways. The pleadings, transcripts of testimony, exhibits and documents are available to him in most instances. In fact, the rules of the Commission so provide. 16 CFR § 1.132(e). See generally 16 CFR § 1.131 et seq. Moreover, difficult questions of law may be tested and definitely resolved before the private litigant enters the fray. The greater resources and expertise of the Commission and its staff render the private suitor a tremendous benefit aside from any value he may derive from a judg-

ment or decree. Indeed, so useful is this service that government proceedings are recognized as a major source of evidence for private parties. * * * "

\* \* \* \* \* \*

> " * * * In this connection, and of crucial significance, is the fact that the potential advantages available to such litigants because of § 5(b) reach far beyond the specific and limited benefits accruing to them under § 5 (a). * * * " 381 U.S. at 319–320, 85 S.Ct. at 1477.

*Leh* reaffirms *3M's* rejection of a co-extensive treatment of Sections 5(a) and 5(b). The issue in that case centered around the question whether the conspiracy charged in the private suit was "based in whole or in part on any matter complained of" in the government proceeding, and would therefore toll the statute of limitations under Section 5(b). In *Leh*, however, the situation was the converse of that presented here in that the private claimant failed to join two out of eight government defendants in his action for damages. The defendants contended, and the lower court so found, that this variance prevented resort to the tolling provision of Section 5(b). The Supreme Court rejected the position that this difference necessitated a holding that the private action was not based in whole or in part on any matter complained of in the government proceeding, and explained the discrepancy on the following grounds:

> "Just as in *Minnesota Mining* the differences between Sherman Act and Clayton Act proceedings were held not to require the conclusion that the private action under the Sherman Act was not based in part on any matter complained of in the Government's § 7 suit, so here we cannot conclude that a private claimant may invoke § 5(b) only if the conspiracy of which he complains has the same breadth and scope in time and participants as the conspiracy described in the government action on which he relies. Here there is substantial identity of parties, six of the seven defendants in this case

being defendants in the government suit as well. In suits of this kind, the absence of complete identity of defendants may be explained on several grounds unrelated to the question of whether the private claimant's suit is based on matters of which the Government complained. In the interim between the filing of the two actions it may have become apparent that a party named as a defendant by the Government was in fact not a party to the antitrust violation alleged. Or the private plaintiff may prefer to limit his suit to the defendants named by the Government whose activities contributed most directly to the injury of which he complains. *On the other hand, some of the conspirators whose activities injured the private claimant may have been too low in the conspiracy to be selected as named defendants or co-conspirators in the Government's necessarily broader net.* The overlap in the time periods of the two conspiracies is less complete, but this disparity is equally without significance." 382 U.S. at 63–64, 86 S.Ct. at 209. (Emphasis added).

This language, we believe, indicates the reluctance on the part of the Supreme Court to deprive a private plaintiff of the benefits accruing from a government action solely on the basis of the government's choice of defendants—a choice which may have no direct bearing on the plaintiff's selection of those defendants who have injured him. We agree with the district court that the difference in defendants named in the two actions may be wholly unrelated to the question of whether the private claim is based in whole or in part on the government suit. Leh v. General Petroleum Corp., supra,

382 U.S. at 63, 86 S.Ct. 203, 15 L.Ed.2d 134.

While *3M* and *Leh* did not decide the precise issue before us, we believe the principles enunciated therein to be of controlling importance here. These decisions unequivocally support the proposition that Section 5(a), which is applicable solely to named defendants in the government proceeding, is not to be treated as coextensive with Section 5(b). Both decisions broadly interpret the scope of Section 5(b) beyond the confines of Section 5(a).

In light of such interpretation, Section 5(b) by its clear and unambiguous language supports appellees' position. Unlike Section 5(a),[5] Section 5(b) on its face does not limit its applicability to named government defendants, but specifies that during the pendency of *any* government civil or criminal proceeding, "the running of the statute of limitations *in respect of every private right of action*" shall be suspended. We deem these textual distinctions significant as evincing the intention of Congress to give Section 5(b) a more expansive interpretation than 5(a). To hold otherwise, we feel, would effectively deny a plaintiff redress against those conspirators who may have directly and proximately contributed to his injuries. A suit prosecuted solely against the major government defendants as participants in a common conspiracy may well prove ineffective unless a plaintiff is able to localize his lawsuit and prove the impact of the national conspiracy on his enterprise. He must be able to link his damages to the activities of the principal conspirators, a difficult task at best without the intervention of those intermediate parties who may have directly affected his business. In short, we rec-

5. Section 5(a) of the Clayton Act, 38 Stat. 731 (1914), as amended, 15 U.S.C. § 16 (a) (1963), provides:

"A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that *a defendant* has violated said laws shall

be prima facie evidence against *such defendant* in any action or proceeding brought by any other party against *such defendant* under said laws or by the United States under Section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto * * *." (Emphasis added.)

ognize that a plaintiff may be required to join parties other than the major offenders named in the government suit in order to secure full and adequate relief.

■ We feel, moreover, that our decision in this case will fully implement the clear Congressional intention underlying Section 5(b) that private parties be accorded the full benefits of prior government actions. Minnesota Mining v. New Jersey Wood Co., supra, 381 U.S. at 320, 85 S.Ct. 1473, 14 L.Ed.2d 405. We are mindful of the Supreme Court's admonition in *3M* and *Leh* that Section 5(b) should not be given a "grudging" and "niggardly" construction. Full realization of the benefits accruing from the government litigation may well depend upon tolling the applicable limitations period as to those conspirators who, for one reason or another, escaped unscathed from the government proceedings.

Appellant argues, however, that it would be unfair to toll the statute of limitations against an enterprise not a party to the government proceedings, since that enterprise would have no means of knowing that it would be subjected to private suits at some later date, and consequently have no reason to retain or collect evidence which would ultimately vindicate its position. Appellant contends Judge Larson's interpretation of Section 5(b) would have the effect of suspending the statute of limitations as to non-government defendants for an unreasonable period of time. Cf. Philco Corporation v. Radio Corporation of America, 186 F.Supp. 155 (E.D.Pa. 1960).

■ We need not concern ourselves with the possibilities of a prolonged and unreasonable suspension period in the context of the present case. The force of appellant's argument quickly dissipates in view of the fact that it was a named co-conspirator in the government proceedings. We attach some significance to this designation, and believe it adequately put appellant on notice that it may have participated in the alleged conspiracy, and could be subject to private actions based on that conspiracy. In view of Hardy's position we find it highly unlikely that it was ill-prepared or unduly surprised at the possibility of a private suit based on the government conspiracy.

The unwary non-government defendant, moreover, who disavows all knowledge of the alleged conspiracy and who has actually played no part in it will be adequately protected by the saving feature of Section 5(b). The tolling provision of that section will not continue to render him susceptible to private antitrust actions, unless the private plaintiff's complaint is "based in whole or in part on any matter complained of" in the government litigation. Appellant does not contend in this Court that there is lacking a substantial identity between the matters alleged in the government action and those alleged in the appellees' private actions.

■ Although Judge Larson held that Section 5(b) tolled the running of the statute of limitations as to all non-government defendants, irrespective of whether they were designated as co-conspirators in the government litigation, the scope of our opinion is necessarily limited to the facts before us. We hold only that where a party has instituted a private antitrust action, based in whole or in part on a matter complained of in a prior government antitrust proceeding, against one named as a conspirator, but not as a defendant, in that proceeding, Section 5(b) of the Clayton Act will toll the statute of limitations during the pendency of the government litigation, and for one year thereafter.

The order appealed from is affirmed.