**In re "East of the Rockies" CONCRETE PIPE Antitrust Cases.**
**Docket No. 12.**

Judicial Panel on Multidistrict Litigation.
May 23, 1969.

Before ALFRED P.. MURRAH, Chairman, and JOHN MINOR WISDOM, WILLIAM H. BECKER, JOSEPH S. LORD, III, EDWIN A. ROBSON, STANLEY A. WEIGEL, and EDWARD WEINFELD, Judges of the Panel.

## OPINION AND ORDER

WILLIAM H. BECKER, Judge of the Panel.

### General Factual Background

Certain plaintiffs and intervening plaintiffs, in civil treble damage antitrust actions pending in the United States District Courts for the Eastern District of Pennsylvania and the Southern District of New York, have moved for transfer under Section 1407, Title 28, U.S.C., to the Eastern District of Pennsylvania of the civil actions listed in the attached Schedule A. On the initiative of the Panel an order was issued to the parties to show cause why the civil actions listed in the attached Schedule B should not be transferred under Section 1407. The product involved in each of those actions is described generally as concrete pipe.

The filing of each of the affected actions followed the return in the District of New Jersey of two criminal indictments charging violations of the antitrust laws. These criminal actions, in that district, were given the numbers Cr. No. 9–66 and Cr. No. 10–66. (None of the affected civil actions were filed in the District of New Jersey.) The defendants in these criminal actions were convicted on pleas of *nolo contendere*.

Some of the plaintiffs in the affected civil actions are end-users of concrete pipe and some are competitors of one or more of the defendants.

The indictment in Cr. No. 9–66 described the defendants, their states of incorporation, principal place of business and short descriptive names as follows:

| Name of Corporation | State of Incorporation | Principal Place of Business | Hereinafter Referred to as |
|---|---|---|---|
| International Pipe and Ceramics Corporation | Delaware | East Orange New Jersey | Interpace |
| Lock Joint Pipe Company | New Jersey | East Orange New Jersey | Lock Joint |
| Kerr Concrete Pipe Company | New Jersey | Paterson New Jersey | Kerr |
| Martin Marietta Corporation | Maryland | New York New York | Martin Marietta |
| North Jersey Concrete Pipe Co. Inc. | New Jersey | Irvington New Jersey | North Jersey |

Interpace is the successor to the concrete pipe business formerly carried on by Lock Joint. Martin Marietta is the successor to the concrete pipe business formerly carried on by the Martin Company, a Maryland corporation, and by American-Marietta, an Illinois corporation, which merged in October 1961 to form Martin Marietta Corporation.

The product "concrete pipe" was defined, in the indictment in Cr. No. 9–66, to mean non-pressure pipe constructed of concrete, either with or without metal components, to convey water or sewage. The metal components were defined, in the same indictment, to mean steel rods, wire and mesh used in the manufacture of concrete pipe. The indictment charges that cement and metal components account for 80% of the cost of raw materials used in the manufacture of concrete pipe; that the metal components are the most costly ingredients; that over 75% of the cement and metal components were produced outside of New Jersey. In this indictment the defend-

ants and their predecessors are charged with an unlawful conspiracy in restraint of interstate trade and commerce (in violation of Section 1, Title 15, U.S.C.) beginning in August 1960, and continuing thereafter until at least April 1962. This indictment further charged the alleged conspirators, including other individuals not named as formal defendants, with the following unlawful acts:

(a) submission of collusive non-competitive prices for the sale of concrete pipe in Northern New Jersey:

(b) allocation and division of orders of concrete pipe in Northern New Jersey among Martin Marietta, Kerr, North Jersey and Lock Joint; and

(c) increasing fixing and stabilizing prices at which concrete pipe was sold in Northern New Jersey.

In Cr. No. 10–66 only Interpace, Lock Joint and Martin Marietta were named as corporate defendants. The product involved in that indictment was "concrete pipe" defined as low pressure and non-pressure pipe (constructed of concrete and metal components, having rubber gaskets and steel ring joints) and low pressure concrete pipe having concrete joints and rubber gaskets. This "concrete pipe", the indictment charges, was used to convey water, primarily for drinking and irrigation purposes, and sewage for sanitation and similar purposes. The time period of the alleged conspiracy, charged in Cr. No. 10–66, began in 1955 and continued at least until 1962. The unlawful overt acts alleged to have been committed by the conspirators are similar to those alleged in Cr. No. 9–66, *supra*.

In Cr. No. 10–66 the territory, in which the alleged conspiracy was designed to be effective, was the "Eastern United States" defined as all states lying east of the Rocky Mountains (except Texas, Louisiana, and Mississippi), from which is derived the description in the title "East of the Rockies." [1]

The indictment in Cr. No. 10–66 further alleged that, during the period involved, Lock Joint (predecessor of Interpace) and Martin Marietta were the principal manufacturers of concrete pipe in the eastern United States; that Lock Joint then had plants in New Jersey, New York, Connecticut, Maryland, South Carolina, Florida, Michigan, Illinois, Missouri, Oklahoma, Kansas, Colorado, Wyoming and Ohio; that Martin Marietta then had plants for the manufacture of concrete pipe in the following states: Alabama, Colorado, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, New Jersey New York, Pennsylvania and Tennessee.

At the time the motion to transfer these cases under Section 1407 was filed there were more affected civil actions (13) filed in the Northern District of Illinois than in any other district; but there were far more plaintiffs in the 6 cases in the Eastern District of Pennsylvania.[2] Nevertheless counsel for the

---

1. A similar indictment alleging a similar conspiracy in ten states "West of the Rockies led to the filing of similar multidistrict litigation in the Ninth Circuit and others. On the recommendation of the Co-Ordinating Committee for Multiple Litigation, pretrial proceedings in these "West of the Rockies" cases in the Ninth Circuit were coordinated (before Section 1407 was enacted). This coordination was managed by the Honorable Martin Pence, Chief Judge of the United States District Court for Hawaii. For this purpose, Judge Pence was assigned, by the Honorable Richard H. Chambers, Chief Judge of the Ninth Circuit Court of Appeals, to all districts in which these cases were pending. Practically all of this "West of the Rockies" multidistrict litigation has been efficiently terminated as a result of this coordination under the judicial supervision of Judge Pence (with the assistance of the Honorable George H. Boldt, Judge of the United States District Court for the Western District of Washington). In coordinating the pretrial procedures Judge Pence and Judge Boldt employed a great many of the procedures recommended by the Co-Ordinating Committee for Multiple Litigation, including central document depositories. These procedures are described in the Manual for Complex and Multidistrict Litigation.

2. See schedule of plaintiff movants attached.

plaintiffs in the Northern District of Illinois, and others, concede that the Eastern District of Pennsylvania is the logical transferee district. In view of the number of plaintiffs in the eastern United States, and the number of plaintiffs in the actions in the Eastern District of Pennsylvania, counsel for the plaintiffs in the Western District of Missouri agree that the Eastern District of Pennsylvania is the logical transferee district. And as stated hereinabove, counsel for the moving plaintiffs in actions in the Southern District of New York also agree that the Eastern District of Pennsylvania is the logical transferee district, if the actions are to be transferred elsewhere.

Before creation of this Panel, the Co-Ordinating Committee for Multiple Litigation, with concerned trial judges, conducted hearings at Philadelphia and Chicago, as a result of which preliminary coordinated discovery was recommended to explore the existence of the relation between the cases in the several districts. Under the orders of the Honorable John Morgan Davis, United States District Judge of the Eastern District of Pennsylvania, to whom all the cases in that district have been assigned, these recommendations have been implemented and discovery is current. In some of the other districts, this discovery has been wholly or partially accomplished.

In the affected civil actions in the Eastern District of Pennsylvania and in the Southern District of New York conflicting class action requests have been made. With one dissenting opinion a *class action issue in the Southern District of New York has been determined adversely to the City of New York by interlocutory decision of the district court and of a Panel of the Second Circuit Court of Appeals, decided April 10, 1969, City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295.*

### The Common Questions of Fact

These actions involve many common questions of fact. All are based on the two criminal indictments in the District of New Jersey, one of which charged a conspiracy effective in most of the states and concerned districts east of the Rockies. The other indictment charged a conspiracy effective in the Northern District of New Jersey. It is true that different products are designated in the two indictments. But these differences do not render the proposed transfers improper. They may or may not affect *the manner in which the transferee court* conducts the pretrial proceedings. In re Plumbing Fixture Cases, Judicial Panel on Multidistrict Litigation, 295 F.Supp. 33.

The complaints in all the affected actions contain allegations similar to those in the indictments mentioned above. Although some of the complaints involve additional years and additional allegations not found in the indictments with respect to pressure pipe (said to be manufactured only by Interpace) and with respect to a violation of Section 2, Title 15, U.S.C., nevertheless the common conspiratorial questions of fact respecting price fixing, allocation of orders and collusive bidding, among others, remain.

Furthermore, in additional to these common conspiratorial questions of fact there are many more common questions of fact in the affected civil actions. The additional common questions of fact include, among others, the following:

(1) question of fraudulent concealment, necessary to toll the statute of limitations;

(2) the several factual questions under *Rule 23, F.R.Civ.P.*, which must be resolved to determine the propriety of the many and conflicting class action requests; and

(3) the many economic questions of fact affecting prices in the absence of conspiracy; including, for example, methods of manufacture, prices of steel products and cement used as components, and production costs, none of which are unique local market questions.

■ Counsel for the defendants, opposing transfer, argue that the criminal indictments are limited in their averments of time periods, parties, products, geographic markets and conspiracy allegations, and are not as broad as the complaints in the civil actions. One answer to these arguments is that the plaintiffs are not limited in their bases of civil actions by the particular averments of the indictments.

■ Treble damage antitrust actions may be maintained without an indictment and without conviction or other government proceeding. A *fortiori*, when there has been a government action, private treble damage civil plaintiffs are entitled to the statutory remedial assistance of the government action [such as the tolling of limitations under Section 5(b)] despite difference in time periods, conspiratorial details and parties, provided there is substantial identity of subject matter. There is such identity when the private complaint is based in whole or in part on any matter complained of in the government action. Section 16, Title 15, U.S.C. Leh v. General Petroleum Corp., 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134, l. c. 138; Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405. Cf. State of Michigan v. Morton Salt Co., D.C., 259 F.Supp. 35, l. c. 55, affirmed sub. nom. Hardy Salt Co. v. State of Illinois (C.A. 8) 377 F.2d 768, cert. den. 389 U.S. 912, 88 S.Ct. 238, 19 L.Ed.2d 260. In the Leh case, *supra*, the Supreme Court expressly approved the "substantial identity of subject matter" rule announced in Union Carbide & Carbon Corp. v. Nisley (C.A. 10) 300 F.2d 561, l. c. 670, app. dism. sub. nom. Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46, and rejected the narrow rule of Steiner v. 20th Century-Fox Film Corp. (C.A. 9) 232 F.2d 190. The rule of the Leh case shows that the argument of defendants in these cases is not relevant and not sound.

■ In light of the Leh case it would be inappropriate to sustain the defendants in their technical view that differences between the underlying indictments and the civil complaints in respect to geographic areas in which the conspiracy is operative, and in respect to time periods, conspiratorial details and parties, somehow militate against transfer under Section 1407. Genuine common questions of fact do not depend upon the limits or breadth of the indictments or convictions in any case.

Defendants urge that there are no common questions of fact in these cases because there are only local markets for delivery of concrete pipe, since the pipe can economically be delivered only a few miles beyond the point of manufacture. Assuming this to be true, the two major defendants, according to the indictments, found this to be no barrier to multi-state organization of its industrial activity in producing, selling and delivering the pipe to many "local markets". Further, in the view of the government, the major defendants found the delivery problem no barrier to multi-state conspiratorial activities affecting a great number of local markets.[3] The defendants in the criminal actions, by pleading *nolo contendere*, chose not to challenge this view of the government by trial on the factual issues. The plaintiffs in the civil actions have the right to raise similar questions of fact.

■ As in many of the instances of multi-district litigation, "small defend-

---

3. If there is, as claimed by plaintiffs, an overall unlawful multi-state conspiracy affecting a large number of local markets, in which small local producers join, each small local producer is responsible for the conspiratorial activities of all on the basis of agency. McCandless v. Furlaud, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121; Standard Oil Co. of Cal. v. Moore (C.A.9) 251 F.2d 188, cert. den. 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148. Local markets and local conspiracies are not synonymous.

ants" oppose transfer of actions in which they are defendants on special grounds of alleged excessive costs. It is by no means clear that the small defendants' interest of overall costs would be served by denying transfer of the claims for relief against them. It is clear, however, that the transferee court can exercise its discretion in scheduling pretrial proceedings in a manner which will protect the legitimate interests of small defendants in the costs of litigation. Cf. In re Plumbing Fixture Cases, *supra*, 295 F.Supp. at page 34.

█ Except in respect to the New Mexico action, it is found that transfer of these affected actions to the Eastern District of Pennsylvania for consolidated or coordinated pretrial proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*The New York Class Action Question*

█ As stated above, in the affected actions pending in the Southern District of New York, the district court has ruled adversely on a request for an interlocutory class action determination. A panel of the Second Circuit Court of Appeals has, by a divided vote, held this interlocutory determination unappealable. Until these class action issues are no longer subject to early appellate review in the Second Circuit and no longer subject to review by extraordinary writ, including certiorari, ruling on the motion of transfer of these cases pending in the Southern District of New York should be deferred. So action will be stayed in those cases until further order of the Panel. At an appropriate time the multidistrict class action conflicts should be given special consideration by the Panel. Cf. In re Multidistrict Private Civil Treble Damage Litigation Involving Plumbing Fixtures, Judicial Panel on Multidistrict Litigation, 298 F.Supp. 484 (filed December 27, 1968).

*The New Mexico Case*

Because counsel agree that the New Mexico case is not a part of the alleged "East of the Rockies" conspiracy, transfer of that case should be denied.

*The Colorado Cases*

The affected actions in the District of Colorado differ in some respects from the other cases, but many common questions of fact remain. Those cases should be transferred because there are many common questions of fact in those cases and the remaining affected cases. Transfer should not be denied because there are additional questions of fact in the Colorado cases.

The Honorable John Morgan Davis is willing to accept transfer of any of the affected civil actions pending in districts other than the Eastern District of Pennsylvania. The United States District Court for the Eastern District of Pennsylvania has consented to the transfer of any of the affected civil actions and the assignment of any of the actions to Judge Davis, as shown by the consent attached hereto signed by Chief Judge John W. Lord, Jr., for that Court.

For the foregoing reasons, it is hereby

Ordered that all civil actions listed in the attached Schedules A and B except those pending in the District of New Mexico and in the Southern District of New York be, and they are hereby, transferred to the Eastern District of Pennsylvania pursuant to Section 1407, Title 28, U.S.C., and assigned to the Honorable John Morgan Davis, United States District Judge. It is further

Ordered that transfer under Section 1407, Title 28, U.S.C., of the civil action pending in the District of New Mexico, listed in Schedule B attached, be, and it it hereby, denied. It is further

Ordered that ruling on the transfer under Section 1407, Title 28, U.S.C., of the civil actions pending in the Southern District of New York, listed in Schedule A attached, be, and it is hereby, stayed until further order of the Panel.

## SCHEDULE A

### Eastern District of Pennsylvania

1. City of Philadelphia, et al. v. International Pipe & Ceramics Corp., et al. — Civil Action No. 43008

2. Board of County Road Commissioners of the County of Wayne & City of Detroit v. International Pipe & Ceramics Corp., et al. — Civil Action No. 43528

3. City of Akron, City of Cleveland and County of Summit v. International Pipe & Ceramics Corp., et al. — Civil Action No. 44421

4. City of Rochester, County of Erie and City of Buffalo v. International Pipe & Ceramics Corp., et al. — Civil Action No. 68–1212

5. State of Alaska v. International Pipe & Ceramics Corp., et al. — Civil Action No. 68–154

6. Ocean Leasing Corp., et al. v. International Pipe & Ceramics Corp., et al. — Civil Action No. 68–1211

### Northern District of Illinois

7. Metropolitan Sanitary District of Greater Chicago, etc., et al. v. Martin Marietta Corp., et al. — Civil Action No. 67 C 684

8. City of Harvey, Illinois, et al. v. Martin Marietta Corp., et al. — Civil Action No. 67 C 711

9. Metropolitan St. Louis Sewer District v. Martin Marietta Corp., et al. — Civil Action No. 67 C 712

10. Village of Hinsdale, Illinois v. Martin Marietta Corp., et al. — Civil Action No. 67 C 2165

11. City of Gary, Indiana v. Martin Marietta Corp., et al. — Civil Action No. 67 C 2164

12. Sanitary District of the City of Gary, Indiana v. Martin Marietta Corp., et al. — Civil Action No. 67 C 2166

13. The County of Cook v. Martin Marietta Corp., et al. — Civil Action No. 67 C 706

14. Louisville and Jefferson County Metropolitan Sewer District v. Martin Marietta Corp., et al. — Civil Action No. 67 C 713

15. Dover Construction Co., et al. v. Martin Marietta Corp., et al. — Civil Action No. 67 C 703

16. Nathan Yorke, assignee, etc. v. Martin Marietta Corp., et al. — Civil Action No. 67 C 704

17. State of Connecticut v. Martin Marietta Corp., et al. & International Pipe & Ceramics Corp., et al. — Civil Action No. 67 C 1182

18. State of New Jersey v. Martin Marietta Corp., et al. — Civil Action No. 67 C 1563

19. Washington Suburban Sanitary Commission v. Martin Marietta Corp., et al. — Civil Action No. 67 C 1451

## Southern District of New York

20. State of New York v. International Pipe & Ceramics Corp., et al.
    Civil Action No. 67 Civ. 1642

21. The City of New York, etc. v. International Pipe & Ceramics Corp., et al.
    Civil Action No. 67 Civ. 1698

## District of Maryland

22. The Mayor and City Council of Baltimore v. Martin Marietta Corp., et al.
    Civil Action No. 18964

23. Baltimore County, Maryland v. Martin Marietta Corp., et al.
    Civil Action No. 18965

24. State of Maryland v. Martin Marietta Corp., et al.
    Civil Action No. 19110

25. Anne Arundel County, Maryland v. Martin Marietta Corp., et al.
    Civil Action No. 19834

26. County Commissioners for Cecil County, Maryland v. Martin Marietta Corp., et al.
    Civil Action No. 19833

27. Montgomery County, Maryland v. Martin Marietta Corp., et al.
    Civil Action No. 19835

## Western District of Missouri

28. Kansas City, Missouri v. Martin Marietta Corp., et al.
    Civil Action No. 16458-4

29. Udell-Niles Concrete Products Co. v. Marietta Corp., et al.
    Civil Action No. 16504-2

## SCHEDULE B

### Eastern District of Kentucky

1. Commonwealth of Kentucky, et al. v. Martin Marietta Corp., et al.
   Civil Action No. 296

### District of Colorado

2. City and County of Denver v. International Pipe and Ceramics Corp.
   Civil Action No. 67 C 630

3. Coppco, Inc. v. International Pipe and Ceramics Corp.
   Civil Action No. 67 C 472

### District of New Mexico

4. State of New Mexico, et al., v. American Pipe and Construction Co., et al.
   Civil Action No. 7183

## SCHEDULE OF MOVANT PLAINTIFFS

*I. Plaintiffs and Intervenor Plaintiffs in Actions Pending in the Eastern District of Pennsylvania*

City of Philadelphia, School District of Philadelphia, Allegheny County Sanitary Authority and Allegheny County v. International Pipe and Ceramics Corporation, et al., Civil Action No. 43008
City of Pittsburgh
Commonwealth of Pennsylvania

Board of County Road Commissioners of the County of Wayne and City of Detroit v. International Pipe and Ceramics Corporation, et al., Civil Action No. 43528
State of Michigan
City of Madison Heights

City of Akron, City of Cleveland and County of Summit v. International Pipe and Ceramics Corporation, et al., Civil Action No. 44421
State of Ohio

State of Alaska v. International Pipe and Ceramics Corporation, et al., Civil Action No. 68–154
State of Alaska

Ocean Leasing Corporation and those plaintiffs listed on Exhibit "A" v. International Pipe and Ceramics Corporation, et al., Civil Action No. 68–1211

| | |
|---|---|
| American Apartments, Inc. | Earth Leasing Corp. |
| Amherst Leasing Corp. | Elm Leasing Corp. |
| Annapolis Leasing Corp. | Ford Leasing Corp. |
| Arcadia Leasing Corp. | Forest Hills Leasing Corp. |
| Argentine Leasing Co. | Garden Leasing Corp. |
| Atlantis Leasing Corp. | Georgetown Leasing Corp. |
| Bel-Air Leasing Corp. | Grand Leasing Co. |
| Belt Parkway Construction Corp. | Greenwich Leasing Corp. |
| Birch Leasing Corp. | Hampton Leasing Corp. |
| Brazilia Leasing Co. | Hartford Leasing Corp. |
| Buick Leasing Corp. | Harvard Leasing Corp. |
| Cadillac Leasing Corp. | Hollywood Leasing Corp. |
| Cambridge Leasing Corp. | Illinois Leasing Co. |
| Canada Leasing Corp. | Indiana Leasing Co. |
| Carolina Gardens, Inc. | International Leasing Corp. |
| Citadel Leasing Corp. | Iowa Leasing Co. |
| Colgate Leasing Corp. | Kansas Leasing Corp. |
| Colombia Leasing Co. | Kentucky Leasing Co. |
| Copenhagen Leasing Corp. | LaFrance Leasing Corp. |
| Cornell Leasing Corp. | Lincoln Leasing Corp. |
| Country Leasing Corp. | London Leasing Corp. |
| Dakota Leasing Co. | Maple Leasing Corp. |
| Danbury Leasing Corp. | Massachusetts Leasing Co. |
| Darthmouth Leasing Corp. | Mexico Leasing Corp. |
| The Lefrak Organization, Inc. | Minnesota Leasing Corp. |
| d/b/a Delaware Leasing Co. | Missouri Leasing Co. |
| District Leasing Corp. | Montauk Leasing Corp. |
| Dodge Leasing Corp. | Nautilus Leasing Corp. |
| Dover Leasing Corp. | Nebraska Leasing Co. |

Newport Leasing Corp.
North Carolina Leasing Co.
Northwestern Leasing Corp.
Oak Leasing Co.
Ocean Leasing Corp.
Oxford Leasing Corp.
Panama Leasing Corp.
Pennsylvania Leasing Corp.
Peru Leasing Co.
Plymouth Leasing Corp.
Pontiac Leasing Corp.
Portland Leasing Corp.
Purdue Leasing Corp.
Queens Leasing Corp.

Regent Leasing Corp.
Riviera Leasing Corp.
Road Leasing Corp.
Rome Leasing Corp.
Surf Leasing Corp.
Syracuse Leasing Corp.
Town Leasing Corp.
Uess Leasing Corp.
Utah Leasing Co.
West Point Leasing Corp.
Westport Leasing Corp.
Wisconsin Leasing Co.
Wyoming Leasing Co.
Yaille Leasing Corp.

City of Rochester, County of Erie and City of Buffalo v. International Pipe and Ceramics Corporation, et al., Civil Action No. 68–1212

> II. *Intervenor Plaintiffs in City of New York v. International Pipe and Ceramics Corporation, et al., Civil Action No. 1698*

State of Alaska
City of Tampa
City of Blaine
Village of Circle Pines
City of Cleveland
Allegheny County
City of Philadelphia
Board of County Road Commissioners of the County of Wayne
Allegheny County Sanitary Authority
School District of Philadelphia
City of Detroit
City of Pittsburgh
State of Ohio
County of Summit
Passaic Valley Water Commission
City of Buffalo
County of Erie
City of Hastings
City of Rochester
Commonwealth of Pennsylvania
State of Michigan
Commonwealth of Massachusetts
City of Madison Heights
Dade County Board of Public Instruction

---

WEIGEL, Judge of the Panel (concurring).

The record in this matter makes it clear that a very substantial amount of discovery in each case will be pertinent only to those cases brought in the same district. This accentuates the question as to whether transfer for coordinated or consolidated pretrial proceedings will, in fact, "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

28 U.S.C. § 1407. If we are to order transfer, the statute requires us to determine that the answer to that question, including each of its four elements, is in the affirmative.

The cases here involve non-pressure pipe for sewers and culverts. Because of the difficulty of transporting such pipe and because of the ease of entry into the industry, non-pressure pipe is sold in distinctly local markets by competitors with plants in those areas. Only two defendants, Interpace and Martin Marietta, sold such pipe throughout the area "East of the Rockies." Martin Marietta had 67 plants in the area; Interpace, 36 permanent plants and 16 temporary ones. All the plaintiffs allege that these two defendants conspired to fix prices and to allocate markets throughout the region, and implemented their scheme through various local conspiracies.

Plainly, then, the cases do present some common questions of fact, i. e., those concerning region-wide industry conditions as well as concerning the existence and local effect of the alleged broad conspiracy between Interpace and Martin Marietta. Even so, much—probably most —of the pretrial discovery and proceedings will concern local witnesses, local records and local aspects of the alleged conspiracies. Such matters are best handled by the local United States District Courts.

If the statute required *all* pretrial proceedings to be conducted by the transferee court, then the case against ordering transfer would be compelling. However, it is manifest from the statute and its legislative history that the Panel may order remand to the transferor courts for local discovery. Subsection (a) of 28 U.S.C. § 1407 provides, in part, that "[e]ach action so transferred shall be remanded by the panel at *or before* the

conclusion of such [joint] pretrial proceedings to the district from which it was transferred * * *." (Emphasis added.) The Judiciary Committee of the House of Representatives observed with regard to subsection (a):

> [I]n most cases there will be a need for local discovery proceedings to supplement coordinated discovery proceedings, and * * * consequently remand to the originating district for this purpose will be desirable.

H.R.Rep. No. 1130 90th Cong., 2d Sess. 4 (1968) U.S.Code Cong. & Admin.News 1968, p. 1901.

This is not to say that the provisions for remand justify anything less than the most careful assessment of the pros and cons of transfer. The statutory objectives are not necessarily served by requiring joint pretrial whenever some— even many—questions of fact are common to a large number of cases. In some such cases, if not in these at hand, coordination and consolidation may impair, not further, convenience, justice and efficiency. To put it in other words, neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, *ipso facto*, by transfer just because there are common questions of fact in the civil actions involved.

There are a number of inherent inconveniences in transfers for coordinated or consolidated pretrial. Some plaintiffs are temporarily deprived of their choices of forum and some defendants may be forced to litigate in districts where they could not have been sued. Considerable time and trouble are involved in the sheer mechanics of transferring and remanding.[1] After transfer, the process of segregating the pretrial matters which should be remanded for handling by the

---

1. In the proceeding at bar, for instance. a total of 24 cases must be transferred to the Eastern District of Pennsylvania from five different district courts. The Manual for Clerks circulated by the Panel indicates that the most efficient procedure would be as follows: Upon receiving the Panel's order of transfer, the clerk of the transferee court transmits a certified copy thereof to the clerks of the transferor courts. After receiving and filing this order, each transferor clerk makes an appropriate entry on the docket sheet of each affected case and then for-

transferor courts may be time-consuming as well as subject to reasonable disagreement. Since remand must be by order of the Panel, the Panel may have to hold further hearings to resolve disagreements among the parties.

The basic question before the Panel in each proceeding looking to coordinated or consolidated pretrial is, then, whether the objectives of the statute are sufficiently served to justify the necessary inconveniences of transfer and remand. Many factors are relevant to the answer. Some will be applicable to all proceedings under the statute; some will not. Some will count heavily in some proceedings; lightly in others. It will be useful—for illustration, if nothing more—to articulate some of these considerations.

How many common questions of fact are there?[2] What is their nature?[3] How many cases are presently and prospectively involved?[4] What is the geographical location of the districts in which the cases pend?[5] If it is anticipated that further cases will be filed, in what districts?[6] Who are the principal witnesses in the cases and where do they reside? What detriment, financial or otherwise, will be imposed upon any of the parties by ordering transfer?[7] Will transfer result in a substantial saving of duplicative work?[8] Will transfer usefully avoid conflicting rulings in the pretrial proceedings of the cases involved?[9] Can many of the advantages of transfer be worked out by cooperation among counsel *without* transfer?[10] Are pretrial proceedings already far along in any one or more of the cases?[11] Will transfer hasten or delay progress in the cases?[12] What is the availability of a

---

wards to the transferee court the files, records, and a copy of the docket sheet of each transferred case.

The transferee clerk usually maintains a master docket sheet for all transferred cases, individual docket sheets for each such case and a complete combined pretrial file for each transferor court. Thereafter, copies of all motions, depositions, exhibits, and other pretrial papers are included in each combined district file. Notices, orders and pleadings must be served on all counsel for all parties, unless alternative arrangements can be agreed upon.

Motions for remand may be initiated by any party, the transferor or transferee courts or the Panel. Only the Panel has the power to order a remand. Hearings may be necessary. Orders of remands must be transmitted to each transferor court by the transferee court and appropriate entries must be made on all the aforementioned docket sheets. The individual case file, a docket sheet for each remanded case, a copy of the master docket sheet and the combined district file must then be transmitted back to the appropriate district court. If some but not all of the cases from a specific district are remanded, then copies of all subsequent motions, orders and other filings must be sent to the transferor court for inclusion in the combined district file.

2. *See* In re Plumbing Fixture Cases, 295 F.Supp. 33 (Jud.Pan.Mult.Lit.1968).

3. *See* In re Air Crash Disaster at Greater Cincinnati Airport (American Airlines), 295 F.Supp. 51 (Jud.Pan.Mult.Lit.1968).

4. *See* In re Scotch Whiskey Antitrust Litigation, 299 F.Supp. 543 (Jud.Pan. Mult.Lit.1969).

5. *See* In re Library Editions of Children's Books, 297 F.Supp. 385 (Jud.Pan.Mult. Lit.1968).

6. *See* In re Air Crash Disaster at Greater Cincinnati Airport (TWA), 298 F.Supp. 353 (Jud.Pan.Mult.Lit.1968).

7. *See* In re Library Editions of Children's Books, *supra.*

8. *See* In re Gypsum Wallboard Antitrust Cases (Roundy v. Kaiser Gypsum), 303 F.Supp. 510 (Jud.Pan.Mult.Lit.1969).

9. *See* In re Fourth Class Postage Regulations, 298 F.Supp. 1326 (Jud.Pan.Mult. Lit.1969).

10. *See* In re Scotch Whiskey Antitrust Litigation, *supra.*

11. *See* In re Protection Devices and Equipment and Central Station Protection Service Antitrust Cases, 295 F.Supp. 39 (Jud. Pan.Mult.Lit.1968).

12. *See* In re Air Crash Disaster at Falls City, Neb. on Aug. 6, 1966, 298 F.Supp. 1323 (Jud.Pan.Mult.Lit.1969).

judge or judges in the proposed transferee court or courts? Will the advantages of transfer overcome the normal desirability of having the same judge who conducts the trial also conduct pretrial proceedings? Will transfer impede or promote the prospect of settlements? Will transfer serve any ulterior motive of any party or parties, such as forum-shopping? If class actions are involved, will transfer make for complexity or for simplification?[13] Will transfer unjustly delay or deny any party's right to provisional remedies such as injunctive relief? What is the status and possible effect of any appeals pending in any of the cases?[14] Will transfer operate to eliminate or avoid an undesirable multiplicity of appeals on similar issues?

In evaluating such of the foregoing considerations as are relevant to this proceeding, the balance does seem very close to me. Notwithstanding the conceded common questions of fact and the anticipated advantages of joint pretrial, the countervailing considerations here are fairly strong. To begin with, there are the inherent inconveniences referred to above. In addition, the indications are that there will be genuine financial hardship upon a number of small defendants, that much of the saving of judicial time through transfer will be offset by the time required for segregation of local from common issues, and that the advantage of having all pretrial proceedings conducted by the trial judge will be lost in all transferred cases. Moreover, since a great number of the plaintiffs are represented by the same counsel, the opportunity exists for gaining many of the advantages of transfer through informal cooperation. However, I am not convinced that these factors weighing against consolidated or coordinated pretrial sufficiently tip the scale to require dissent from the decision of the Panel.

13. *See* In re Plumbing Fixture Cases, 298 F.Supp. 484 (Jud.Pan.Mult.Lit. Dec. 27, 1968).

14. *See* In re Mid-Air Collision Near Hendersonville Northern Carolina on July 19, 1967, 297 F.Supp. 1039 (Jud.Pan.Mult. Lit.1969).