In re MOTION PICTURE LICENSING ANTITRUST LITIGATION.

No. 366.

Judicial Panel on Multidistrict Litigation.

April 3, 1979.

OPINION AND ORDER

Before MURRAY I. GURFEIN, Chairman, and EDWIN A. ROBSON, STANLEY A. WEIGEL, ANDREW A. CAFFREY, ROY W. HARPER, and CHARLES R. WEINER, Judges of the Panel.

PER CURIAM.

## I. BACKGROUND

This litigation presently consists of nine actions [1] pending in a total of seven federal districts: two each in the District of Arizona and the Southern District of Texas; and one each in the Southern District of California, the Northern District of Georgia, the Western District of Tennessee, the Middle District of Florida and the District of Utah. The complaint in each action involves alleged violations of the federal antitrust laws in connection with the distribution, licensing and exhibition of motion picture films.

Each action was filed by one or more entities that own and operate motion picture theaters (exhibitors). The principal defendants in these actions are a total of eleven motion picture producers and/or distributors (distributors). One of these distributors has been named as a defendant in each action, and five other distributors have been named as defendants in eight of the nine actions before the Panel. Four of the remaining five distributors have been named as defendants in at least two of these actions.[2] In addition, with only one exception (the Utah action), the complaints include certain exhibitors as defendants; a few of the exhibitor defendants are named as defendants in two or more actions.

The complaints in all nine actions allege that defendants conspired, in violation of Section 1 of the Sherman Act, unreasonably to restrain trade and commerce in the distribution, licensing and exhibition of motion picture films, and that defendants, in violation of Section 2 of the Sherman Act, conspired to, attempted to and did in fact monopolize that trade and commerce. The primary purposes of defendants' conduct, the complaints generally allege, were 1) to establish an artificially high price and/or rental rate for the licensing and exhibition of motion picture films; 2) to establish the terms and conditions for such licensing and exhibition; and 3) to eliminate or reduce competition for motion pictures distributed by the defendant distributors. In particular, the complaint in each action charges that the defendants named in that action engaged in one or more of the following allegedly illegal acts or practices: "blind-bidding" on motion picture films (requiring exhibitors to negotiate or bid for film licenses without an opportunity to see the films in advance); "move overs" (switching a motion picture from the screen to which a bid was awarded to different screens, which were not involved in the bidding process); giving preferential treatment in the awarding of licenses to large theater circuits; bid rigging or sham bidding as to motion picture licenses; fixing prices and terms of film licenses; fixing movie admission prices; "block-booking" of motion pictures (licensing or offering for license one motion picture feature or group of features on condition that an exhibitor will also license another feature or group of features released by a distributor during a given period); "splitting" (a device by which exhibitors agree among themselves that only one, or certain of them, will attempt to license any particular motion picture offered by a given distributor in a specific geographic market); unreasonable "clearances" (the contractual periods between "runs" of a film); and boycotts.

1. Two additional actions, *Wilder Enterprises, Inc. v. Allied Artists Pictures Corporation, et al.*, E. D. Virginia, C.A. No. 77–637–N and *FLW Theatre Co. v. General Cinema, et al.*, N. D. Texas, C.A. No. 3–77–0170, were included in the motion for transfer in this litigation. Since the time of the Panel's hearing on this motion, defendants have obtained a directed verdict against the plaintiff in *Wilder*, and consideration of the question of transfer with respect to that action is therefore moot. In *FLW*, the court in the Northern District of Texas has recently dismissed all but one of the claims. The two parties involved in that single remain-

ing claim have advised the judge to whom *FLW* is assigned, and he in turn has notified the Panel, that this claim "will not be tried, but will be settled." This claim presently is scheduled for trial commencing on June 4, 1979. On the recommendation of the judge before whom *FLW* is pending, *FLW* is excluded from the transfer we are herewith ordering.

2. Most of these distributors are allegedly members of the Motion Picture Association of America, which itself is named as a co-conspirator in the Tennessee action.

Most of the complaints allege that some of these acts or practices are prohibited under the terms of a series of consent decrees of nationwide scope and application entered as a result of *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), and related proceedings such as *United States v. Loew's, Inc., et al.*, 1950 CCH Trade Cases ¶ 62,573 (S.D.N.Y.).[3] Most of the distributor defendants in the present litigation are subject to those decrees.

The allegations of the complaints in five actions before us (the Southern District of Texas[4] and Arizona actions, and the California action) specifically focus on the geographic area in which plaintiffs in those actions operate theaters. The complaint in the Georgia action is not limited on its face to the area in which plaintiff in that action is located, but discovery in that action has been restricted geographically to a relatively local area by court order. A somewhat similar geographic limitation on discovery has been accomplished by stipulation in the Florida action, but at least some plaintiffs in this action presently are seeking permission to conduct additional discovery concerning "national issues." Transcript at 24. In the Tennessee action, where the complaint includes allegations of a national conspiracy, plaintiff has not to date contested defendants' confinement of their responses to plaintiff's discovery requests to particular geographic areas. Finally, the Utah action also includes allegations of a national conspiracy, and discovery in that action has proceeded on national issues.

## II. PROCEEDINGS BEFORE THE PANEL

Twelve of the fourteen plaintiffs in the Florida action have moved the Panel, pursuant to 28 U.S.C. § 1407, to centralize these nine actions[5] for coordinated or consolidated pretrial proceedings. Movants have not suggested a transferee district. Plaintiffs in the Southern District of Texas actions subsequently moved the Panel to centralize this litigation in the Southern District of Texas; these plaintiffs oppose Section 1407 transfer to any other forum. All other responding parties—which include all distributor defendants, many exhibitor defendants, the remaining two plaintiffs in the Florida action, and plaintiffs in the Georgia, Tennessee and Utah actions—oppose Section 1407 transfer.

We find that these actions involve common questions of fact and that, with the exception of the Georgia action, centralization of these actions under Section 1407 in the Southern District of Texas will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

## III. THE QUESTION OF TRANSFER

Opponents to transfer argue that each action before the Panel raises a multitude

---

3. The practices enjoined in *Paramount* include, *inter alia*, the following: 1) Granting any license in which minimum prices for admission to a theater are fixed by the parties in any manner; 2) Agreeing to maintain a system of clearances; 3) Granting any clearances between theaters not in substantial competition, or granting or enforcing any clearance against theaters in substantial competition in excess of that reasonably necessary to protect the license in the run granted; 4) With only limited exceptions, making any franchise agreements; 5) Making any formula deal or master agreement (a licensing agreement covering the exhibition of films in a number of theaters, usually comprising a circuit); 6) Licensing any film for exhibition upon any run in any theater in any other manner than that each license shall be offered and taken theater by theater, solely upon the merits and without discrimination in favor of affiliated theaters, circuit theaters or others.

4. Tercar Theatre Company (Tercar), the sole plaintiff in one of the Southern District of Texas actions, is named as a defendant in the other Southern District of Texas action.

5. Movants have advised the Panel of two potential tag-along actions—*Twentieth Century-Fox Film Corporation v. Dubinsky, et al.*, D.Nebraska, C.A. No. 78-0-276 and *Stopulos, et al. v. Buena Vista Distribution Co.*, S.D.Iowa, C.A. No. 75-16-D. *See* Rules 1, 9 and 10, R.P.J.P.M.L., 78 F.R.D. 561, 562, 567-69 (1978). Pursuant to Rule 10(e), *id.* at 568-69, all parties now before us are ordered to keep the clerk of the Panel informed of any additional potential tag-along actions in this litigation.

of individual factual issues, and that no overriding common questions of fact are involved in this litigation. The core of each complaint except one, opponents contend, is the allegation that certain exhibitors, which are in competition with the plaintiff in the limited geographic area from which plaintiff draws its patronage, conspired with certain distributors to prevent plaintiff from obtaining films by causing plaintiff's bids or offers to license films to be rejected in favor of those of competing exhibitors. Thus, opponents maintain, most of the complaints allege a separate conspiracy involving a variety of different distributor and exhibitor defendants, market areas and time periods. And although some of the complaints include sweeping allegations relating to antitrust violations outside the local area in which a plaintiff operates, as a practical matter discovery in all but one action has been almost totally limited to those local areas, opponents state.

Such disparate factual allegations and localized discovery requests are inevitable in these actions, opponents assert, given the nature of the motion picture licensing process. Arriving at the final terms upon which a film will be licensed to a particular exhibitor is a complex business calculation which depends on a distributor's estimates concerning a number of distinctly "local" factors including, *inter alia*, the grossing potential of a film in a given market, the age and other characteristics of the potential audience for the film, the grossing potential of specific theaters in that market for that audience, and the licensing terms offered by the operators of those theaters, opponents argue. Opponents further contend that numerous courts that have dealt with alleged antitrust violations concerning the distribution, licensing and exhibition of films (including many of the specific acts and practices enumerated on pages 838 839, *supra*) have held that these allegations must be resolved on the basis of local issues.

Also, opponents contend that unique questions of fact clearly predominate in the present actions because of defenses raised, or almost surely to be raised, in each action. In response to each plaintiff's contention that plaintiff was not able to license films as a result of illegal conduct, the defendants state that they will attempt to prove that any failure to obtain films was caused by legitimate business circumstances peculiar to that particular plaintiff—for example, that plaintiff was not awarded a film because plaintiff's bids or offers were inferior to bids or offers of competing theaters, or that plaintiff was not awarded films because of its theater's poor location or less desirable facilities.

Opponents deny that Section 1407 transfer would serve the convenience of the parties and witnesses or promote the just and efficient conduct of these actions.[6] While some opponents admit that a few of the witnesses for the distributor defendants might be called to give depositions in more than one action, these opponents maintain that, in the light of the local nature of the issues, even testimony of the same witness about marketing films in one city will have little or no relevance to marketing practices in another city. If there is any such relevance, these opponents state, duplication can be avoided by filing notices of a particular deposition in all actions. At any rate, all opponents contend, because the licensing of motion pictures is done market by market, the vast majority of discovery concerns witnesses and factual issues that vary widely from market to market. Even where a party is a defendant in more than one action, opponents argue, the employees of that party who have knowledge of relevant facts generally differ from action to action. Thus, opponents assert that Section 1407 transfer would increase the costs of litigating these actions by entangling the parties in massive, and often quite irrelevant, coordinated or consolidated pretrial proceedings. Opponents also urge that Section 1407 proceedings are particularly inappropriate here

6. Some opponents contend that Section 1407 proceedings would be particularly complicated by the fact that Tercar is the plaintiff in one of the Southern District of Texas actions and a defendant in the second Southern District of Texas action.

because pretrial proceedings in several actions are very well advanced and some of the actions may be nearly ready for trial.

We find these arguments unconvincing. While we recognize that each action before us may involve some unique, localized factual issues, a careful review of the entire record before the Panel has persuaded us that all these actions, regardless of the market area involved, share numerous common questions of fact on the economic and conspiratorial issues, particularly regarding the manner in which film distribution decisions are made in the motion picture industry.

The national conspiracy alleged in the complaint in the Utah action necessarily encompasses many aspects of the somewhat more limited conspiracies alleged in many of the other actions before us. *See, e. g., In re Cement and Concrete Antitrust Litigation*, 465 F.Supp. 1299, 1300 (J.P.M.L., filed February 28, 1979) (slip opinion at 4); *In re Airport Car Rental Antitrust Litigation*, 459 F.Supp. 1006, 1007 (Jud.Pan.Mult.Lit. 1978). In the Utah action, plaintiff, which operates approximately 140 theaters located in the states of Utah, Arizona, Nevada and California, alleges that six distributor defendants[7] have agreed to 1) fix the terms and conditions upon which motion pictures are licensed to exhibitors throughout the United States; and 2) distribute their motion pictures through blind-bidding. Plaintiff further alleges that defendants have established and maintained a national monopoly in the distribution of motion pictures. Thus the allegations of this complaint alone provide a unifying theme to this litigation. As we stated in *In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F.Supp. 244, 248 n.3 (Jud.Pan. Mult.Lit.1969):

> If there is, as claimed by plaintiffs, an overall unlawful multi-state conspiracy affecting a large number of local markets, in which small local producers join, each small local producer is responsible for the conspiratorial activities of all on the basis of agency. *McCandless v. Fur-*

*laud*, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121; *Standard Oil Co. of Cal. v. Moore* (C.A.9) 251 F.2d 188, *cert. den.* 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148. Local markets and local conspiracies are not synonymous.

In addition to the overriding claims raised by plaintiff in the Utah action, our conclusion that the actions before us share numerous factual issues is buttressed by the strong commonality of distributors as defendants in these actions. *See, e. g., In re Commonwealth Oil/Tesoro Petroleum Securities Litigation*, 458 F.Supp. 225, 229 (Jud. Pan.Mult.Lit.1978). Moreover, movants have represented to us that discovery already conducted in some of these actions "demonstrates that regional decisions are made or approved (tacitly or overtly) on a national level." For example, movants state, various licensing instruction manuals published by some of the distributor defendants and obtained by plaintiffs in this litigation provide that particular minimum terms and licensing policies for any given film are "inaugurated and substantially controlled" by supervisory and headquarters personnel. And at the hearing on this matter, counsel for plaintiffs in the two Southern District of Texas actions stated:

> While it seems there are markets where suits are filed claiming only violations in those markets, all the decisions in the industry are made by eight or nine men who are the general sales managers of the various companies. They decide the sales policy, the blind bidding policy, the bidding criteria, the subjective criteria in awarding the pictures, the rejection and negotiations of all bids, and they seem to be able to place their pictures on the terms and guarantees and play time as they decide, regardless of the state of the bidding records, and we have found in deposing local people that they all say that those decisions were made at the home office, either Los Angeles or New York, and consequently when you go to

---

7. Plaintiff in the Utah action has reached a settlement with two of these six defendants.

take those depositions you find you are deposing the same people.

Transcript at 11–12.

We are thus convinced that transfer under Section 1407 for coordinated or consolidated pretrial proceedings is necessary in order to prevent duplicative discovery, eliminate the possibility of inconsistent pretrial rulings, and conserve the time and efforts of the parties, the witnesses and the judiciary. The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular market area, party,[8] or group of parties to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation. *See In re Republic National-Realty Equities Securities Litigation*, 382 F.Supp. 1403, 1405–06 (Jud.Pan.Mult.Lit.1974). Moreover, no party need participate in pretrial proceedings unrelated to that party's interests. *See, e. g.*, Parts I and II, §§ 2.31, *Manual for Complex Litigation* (rev. ed. 1977).

On the recommendation of the judge before whom the Georgia action is currently pending, we are excluding that action from our transfer order. He has advised us that a final discovery conference was held in the Georgia action on March 16, 1979, and that the remaining discovery is scheduled to be concluded shortly and is of a local nature. Accordingly, transfer of the Georgia action is not now appropriate. *See In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (Jud.Pan.Mult.Lit.1979). We recognize that all actions in this litigation are not at the same stage of pretrial, but we are convinced that the remaining eight actions before us will benefit from centralized pretrial proceedings under Section 1407.[9] We observe that if and when an action or claim is, in fact, ready for trial or otherwise ready for remand because the transferee judge finds that the Section 1407 proceedings pertaining to that action or claim are completed, the transferee judge may suggest to the Panel that the Panel remand the action or claim to its transferor court. 28 U.S.C. § 1407(a), Rule 11(c)(ii), R.P.J.P.M.L., 78 F.R.D. 561, 569 (1978). *See e. g., In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 453 F.Supp. 108 (Jud.Pan.Mult.Lit.1978). And, of course, procedures exist to allow discovery completed in any action to be made available to all interested parties in the other actions. *See, e. g., In re South Central States Bakery Products Antitrust Litigation*, 433 F.Supp. 1127, 1130 (Jud.Pan. Mult.Lit.1977); *Manual, supra*, at Parts I and II, §§ 3.11.

We are keenly sensitive to the argument that Section 1407 transfer may cause certain parties to suffer some inconvenience. *See, e. g., In re "East of the Rockies" Concrete Pipe Antitrust Cases, supra*, 302 F.Supp. at 254–56 (concurring opinion). Nevertheless, we are confident that prudent counsel in all actions, under the supervision and guidance of the transferee judge, can apportion their workload and otherwise combine forces to effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities. *See, e. g., In re Sugar Industry Antitrust Litigation*, 427 F.Supp. 1018, 1027 (Jud.Pan.Mult.Lit.1977); *Manual, supra*, at Part I, §§ 1.90–1.93.

## IV.  THE TRANSFEREE DISTRICT

On the basis of the record before us, no single district stands out as the most appro-

---

**8.** The fact that Tercar is both a plaintiff and a defendant in the Southern District of Texas actions should not unduly complicate coordinated or consolidated pretrial proceedings. We note that both Texas actions are already pending before the transferee judge in this litigation, and that Tercar is one of the parties before us that favors Section 1407 transfer. We are confident, as we have observed in analagous situations in the past, that any unique discovery needs regarding Tercar and any antagonistic interests among the parties may be accommodated by the transferee judge in designing the pretrial program. *See, e. g., In re Corrugated Container Antitrust Litigation*, 447 F.Supp. 468, 471 (Jud.Pan.Mult.Lit.1978).

**9.** We also note that additional actions are pending which may be appropriate for inclusion in the coordinated or consolidated pretrial proceedings we are herewith ordering. See note 5, *supra*.

priate transferee forum. We have selected the Southern District of Texas as the transferee district because that district is centrally located and easily accessible to all parties in the pretrial proceedings. Moreover, the Honorable John V. Singleton, Jr., who heretofore has been supervising the two actions already pending there, has had an opportunity to become familiar with many aspects of this litigation.

IT IS THEREFORE ORDERED that transfer pursuant to 28 U.S.C. § 1407 of the action entitled *Southway Theatres, Inc. v. Cinerama Releasing Corp., et al.*, N.D.Georgia, C.A. No. C75–1631 A, be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407, the remaining actions listed on the following Schedule A and pending in districts other than the Southern District of Texas be, and the same hereby are, transferred to the Southern District of Texas and, with the consent of that court, assigned to the Honorable John V. Singleton, Jr. for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending there.

ROY W. HARPER, Judge of the Panel, dissents from this opinion.

SCHEDULE A

Civil Action No.

**Middle District of Florida**

| | |
|---|---|
| Florida West Theatres, Inc., et al. v. Warner Brothers Distributing Corp., et al. | 74–326–Civ–J–T |

**Southern District of Texas**

| | |
|---|---|
| Tercar Theatre Co. v. General Cinema Corp., et al. | H–77–1294 |
| Universal Amusement Co., Inc., et al. v. General Cinema Corp., et al. | H–78–192 |

**District of Arizona**

| | |
|---|---|
| Cineworld Corp. of Texas, et al. v. United Artists Corp., et al. | 77–055–TUC |
| Harkins Amusement Enterprises, Inc. v. General Cinema Corp., et al. | 77–736–PHX–WEC |

**Western District of Tennessee**

| | |
|---|---|
| Balmoral Cinema, Inc. v. Allied Artists Pictures Corp., et al. | 77–2101 |

**Southern District of California**

| | |
|---|---|
| Family Enterprises, Inc. v. Twentieth Century Fox, et al. | 78–0061–T |

**Northern District of Georgia**

| | |
|---|---|
| Southway Theatres, Inc. v. Cinerama Releasing Corp., et al. | C75–1631A |

**District of Utah**

| | |
|---|---|
| Syufy Enterprises v. Columbia Picture Industries, Inc., et al. | C–77–0181 |