### In re MOTION PICTURE LICENSING ANTITRUST LITIGATION.

**Re: Ten Potential Tag-Along Actions.**

**No. 366.**

Judicial Panel on Multidistrict Litigation.

Nov. 5, 1979.

OPINION AND ORDER

Before MURRAY I. GURFEIN, Chairman, and ANDREW A. CAFFREY,* ROY W. HARPER, CHARLES R. WEINER, EDWARD S. NORTHROP and ROBERT H. SCHNACKE, Judges of the Panel.

PER CURIAM.

I. *BACKGROUND*

A. *The Panel's Earlier Decisions*

The Panel, pursuant to 28 U.S.C. § 1407, previously centralized eight actions in this litigation in the Southern District of Texas for coordinated or consolidated pretrial proceedings before the Honorable John V. Singleton, Jr. *In re Motion Picture Licensing Antitrust Litigation,* 468 F.Supp. 837 (Jud. Pan.Mult.Lit.1979). On June 27, 1979, and September 27, 1979, the Panel denied motions by numerous parties in this litigation for reconsideration of the Panel's decision.

B. *The Proceedings in the Transferee District*

On April 17, 1979, Judge Singleton entered an order governing the practice and procedure of the actions in the transferee district. That order, *inter alia,* consolidated the actions for pretrial proceedings. In addition, the order states in part as follows:

> The court is acutely aware of the magnitude of this litigation and of the potential expense to the litigants and the burdens that the litigation will impose upon all the parties and attorneys. To that end the court expects and will, if necessary, require all attorneys and clients to cooperate to the fullest extent to lessen the potential expense and the burden of time. For example, the court would expect that counsel on all sides attempt in every way to keep to a minimum the number of motions proposed to be filed and, where possible, file only one motion, pleading or brief pertaining to the same subject matters. By local rule in this court, the number of interrogatories is limited to thirty questions that can be submitted to any one party or any one witness. Also, the court expects complete cooperation regarding the scheduling of depositions and this likewise should be limited to only those depositions that are absolutely necessary for either discovery or for the perpetuation of testimony.

At the first pretrial conference in this litigation, held on May 30, 1979, Judge Singleton ordered the parties to establish a joint document depository in Houston, Texas, in which all parties were to place all pre-transfer discovery documents, deposition transcripts and interrogatory answers; to prepare status reports on the actions in the transferee district; and to file "position papers" concerning the appropriate scope, order and priority of discovery in this litigation. Judge Singleton also organized the parties into three "liaison groups" (plaintiffs, distributor defendants and exhibitor defendants), and appointed steering committees for plaintiffs and the distributor defendants.

* Judge Caffrey took no part in the decision of this matter.

On August 3, 1979, a second pretrial conference was held in the Southern District of Texas. In an order dated August 20, 1979, Judge Singleton ruled that discovery in the actions in the transferee district would be confined "for the present to the common legal and factual issues." Judge Singleton's order further provides that:

[a]ll discovery presently on file in any of the actions comprising this litigation, and all discovery to be undertaken while these cases are consolidated in this court, shall be considered as having been made in and available to all parties in all other actions herein and all later transferred 'tag-along' cases, absent a showing of good cause why it should not apply to some particular case or party.

The August 20, 1979, order also establishes a schedule for document discovery on the "common legal and factual issues."

On September 6, 1979, all plaintiffs in seven of the eight actions in the transferee district made a motion for leave to file a proposed "unified and consolidated" complaint. This complaint, if allowed by Judge Singleton, would, *inter alia*, (1) be brought on behalf of a class consisting of "all . . . persons or entities . . . who are or were engaged in the business, among others, of exhibiting feature motion pictures to the public throughout the United States (exclusive of defendant distributors) during the period January 1, 1978" to the present; (2) add several new defendants to each action; (3) include nearly every alleged violation of Sections 1 and 2 of the Sherman Act that is raised in the complaints in the ac-

tions in the transferee district; and (4) add some alleged violations of Section 1 of the Sherman Act that have not to date been raised by the complaints in the transferred actions.

Plaintiff in the eighth action in the transferee district has also recently moved to amend the complaint in that action to, *inter alia*, add new defendants. No class is sought in this action.

### C.   *The Potential Tag-Along Actions*

Ten potential tag-along actions presently are before the Panel [1] either on the Panel's own initiative by means of orders to show cause issued by the Panel pursuant to Section 1407 and Rule 10(b), R.P.J.P.M.L., 78 F.R.D. 561, 568 (1978), and/or as a result of motions under Section 1407.[2]

The allegations of the complaint (and counterclaim, if any) and the status of discovery and other pretrial proceedings in each of the actions before us may be summarized as follows:

1.   *American Multi-Cinema, Inc., et al. v. Motion Picture Association of America, Inc., et al., C.D. California (hereinafter referred to as AMC)*

*AMC* was filed on May 10, 1979, by eight exhibitors (six of which are named as defendants in at least one action in the transferee district) against seven distributors; the Motion Picture Association of America, Inc. (MPAA), a corporation allegedly engaged in nationwide activities on behalf of

---

1.  An additional action, *General Cinema Corporation of Texas v. United Artists Corporation*, N.D.Texas, C.A. No. CA3–77–170, was also before the Panel at the time of our hearing on this matter. Since that time, however, that action has been settled and dismissed, and on October 17, 1979, we vacated our order to show cause concerning the action.

2.  On July 26, 1979, and August 8, 1979, the Panel issued orders to show cause why seven of the ten actions now before us should not be transferred to the Southern District of Texas.

  On July 26, 1979, the Panel also issued an order to show cause, in the Virginia action

before us, why (1) the claims raised in the complaint and the counterclaim in this action should not be transferred to the Southern District of Texas, and (2) the original claims brought by plaintiffs should not be separated and remanded to the Eastern District of Virginia. Some of the defendants-counterclaimants in this action, however, subsequently moved the Panel to transfer plaintiffs' original claims to the Southern District of Texas.

  Finally, on August 17, 1979, certain defendants in the two Western District of New York actions moved the Panel to transfer those actions to the Southern District of Texas.

its member distributors; and Sargoy, Stein & Hanft (Sargoy), an "auditing firm."[3]

Plaintiffs allege that, in violation of Sections 1 and 2 of the Sherman Act, defendants and unnamed co-conspirators, from at least 1970 until the present, have conspired to fix license fees, admission prices and certain uniform practices and conditions favorable to distributor defendants in connection with the distribution of motion pictures throughout the United States. Plaintiffs also allege that defendants have monopolized the domestic distribution of motion pictures. In furtherance of this alleged conspiracy, the complaint alleges, defendants have, *inter alia* : (1) blind bid motion pictures; (2) joined together for the purpose of using the MPAA's Classification and Rating Administration (CARA) to discriminate in favor of MPAA members and independent producers who distribute their pictures through members of MPAA, and to rate deceptively the motion pictures distributed by MPAA members; (3) limited the source of supply and discouraged new entry into the production and distribution of motion pictures; (4) imposed uniform license agreements upon exhibitors; (5) construed provisions of license agreements uniformly; (6) enforced these uniform license provisions "through purported audits . . . and other forms of policing practices and coercive activities conducted by Sargoy. . . ."; (7) required exhibitors to charge certain minimum admission prices in order to obtain licenses to exhibit motion pictures; and (8) set and maintained uniform licensing fees, terms and conditions. The defendants are alleged to have implemented and enforced their activities through use of personnel and facilities of Sargoy and the MPAA, and by establishing joint and interlocking business arrangements.

Only minimal, if any, discovery and other pretrial proceedings have yet occurred in *AMC.*

### 2. *General Cinema Corporation v. Buena Vista Distribution Co., Inc., C.D. California (hereinafter referred to as General Cinema)*

This action was commenced in August, 1978, by General Cinema Corporation (General Cinema), the largest theater chain in the United States (and a defendant in four of the actions in the transferee district), against Buena Vista Distribution Co., Inc. (Buena Vista), the domestic distributor of motion pictures produced by Walt Disney Productions. The complaint alleges that, in violation of Section 1 of the Sherman Act, Buena Vista and the exhibitor licensees which contract with Buena Vista have agreed to raise and fix theater admission prices throughout the United States by the use of minimum per capita royalty provisions in Buena Vista's license agreements. These provisions provide for the computation of the minimum film rental owed to Buena Vista on the basis of an amount (generally either a flat figure or an amount derived by multiplying a percentage figure offered by the exhibitor times an amount stated by Buena Vista) for each person admitted to the theater to view the picture. Plaintiff claims that these provisions amount to price fixing because, as a practical economic matter, exhibitors must charge an admission price at least equal to the amount they must pay to Buena Vista as the minimum film rental calculated under the per capita royalty provision.

Buena Vista has filed a counterclaim against General Cinema, charging that General Cinema and other exhibitors have agreed to illegal splitting arrangements.

---

**3.** The complaint in *AMC* describes Sargoy as follows:

> Sargoy is primarily an auditing firm totally controlled by distributor defendants, performs services solely for them on matters pertaining to distribution of feature motion pictures and conducts on their behalf, throughout the United States, audits and reviews of the books and records maintained by exhibitor licensees, including those main-

> tained by plaintiffs. Sargoy also employs a number of attorneys who purport to and do act from time to time as attorneys solely for distributor defendants.

> Although neither MPAA nor Sargoy is currently a defendant in any of the actions in the transferee district, plaintiffs in the transferee district are seeking leave to add MPAA and Sargoy as defendants.

Discovery has begun in this action, but no discovery cutoff or trial dates have been established.

### 3. Fred Stein, et al. v. United Artists Corporation, et al., C.D. California (hereinafter referred to as Stein)

*Stein* was commenced in May, 1979, by two individuals[4] against four distributors, four exhibitors, and certain individual defendants. Plaintiffs allege, *inter alia*, that, in violation of Section 1 of the Sherman Act and California state law, defendants and unnamed co-conspirators refused to license first run motion pictures to Century's theaters located in Hollywood and Westwood, California; denied Century's theaters the opportunity to bid or negotiate for or to obtain first run motion pictures; supplied pictures to Century's competitors instead; gave Century's competitors preferential treatment in bidding or negotiating for first run motion pictures; and refused to evaluate Century's offers on their merits and in a non-discriminatory manner. The complaint alleges that defendants undertook these activities in order to coerce one of the plaintiffs to sell the individual defendants a one-half interest in Century.

The complaint further alleges a cause of action based upon the common law doctrine of intentional interference with contractual rights and prospective advantage. Plaintiffs allege that defendants' activities disabled Century from repaying its indebtedness to the plaintiffs and their individual assignors, or to the creditors whose claims they guarantied.

Discovery has commenced in this action. Some depositions have been taken, and answers to interrogatories are due in the near future. Defendants have recently filed a motion under Rule 12(b)(6), Fed.R.Civ.P., to dismiss *Stein* on the ground that plaintiffs do not have standing to bring their action.

### 4. Holiday Theatres, Inc. v. Wometco Enterprises, Inc., et al., S.D. Florida

This action was commenced by a Miami, Florida exhibitor and presently is pending against eight distributors, three exhibitors and one producer.[5] Plaintiff alleges that defendants, in violation of Section 1 of the Sherman Act, have conspired to discriminate against plaintiff and to favor the exhibitor defendants by: (1) allotting first run motion pictures to the exhibitor defendants, and refusing to deal with the plaintiff pursuant to splitting agreements among the exhibitor defendants; (2) granting unlawful and unreasonable clearances (the contractual periods between "runs" of a film) over the plaintiff in favor of the exhibitor defendants; (3) refusing to allow plaintiff to exhibit motion pictures on any run, or demanding exorbitant prices or imposing unreasonable conditions on plaintiff; (4) engaging in blind, discriminatory or illegal bidding, or prearranged negotiation; and (5) engaging in conduct violative of the *Paramount* decrees.[6]

At least one distributor defendant has filed a counterclaim charging that plaintiff and other exhibitors in the Miami, Florida area have entered into splitting agreements in that area.

Substantial discovery has been conducted in this action, and in April, 1979, the court restricted discovery to the years 1974 through and including 1978, and to the Miami area. On May 20, 1979, the court granted a motion by plaintiff to stay all discovery in this action pending the Panel's ruling. At least one defendant moved for reconsideration of the order, and in late May, 1979, the court modified the stay to

---

4. One of these individuals has brought *Stein* both in his own right and as an assignee of Century Cinema Circuit, Inc. (Century), a former exhibitor of motion pictures in southern California and Arizona. The other individual plaintiff has commenced this action in her own right and as assignee of the right of two other individuals who had an unspecified relationship to Century.

5. Three additional distributors and four other exhibitors originally were defendants but have settled the claims against them in this action.

6. The Panel earlier discussed the *Paramount* decrees in *In re Motion Picture Licensing Antitrust Litigation, supra,* 468 F.Supp. at 839.

provide that all discovery previously ordered and all discovery noticed or requested prior to the entry of the stay order was to be completed.

### 5. *National Amusements, Inc. v. Columbia Pictures Industries Inc., et al., D. Massachusetts*

This action was filed in early 1977 by a multi-state exhibitor against Columbia Pictures Industries, Inc., a distributor; and ITC Entertainment, a producer and/or distributor of motion pictures. Plaintiff alleges that Columbia and various unnamed distributors and some named and some unnamed exhibitors have conspired:

> in cities throughout the United States in which [plaintiff] owns and operates theatres, to restrain the trade of [plaintiff] in and from the right to compete in the licensing and exhibition of motion pictures, and to restrain and/or exclude [plaintiff] from the licensing and exhibition of motion pictures, all in violation of Sections 1 and 2 of the Sherman Act [and the *Paramount* decrees]. . . .

The complaint further alleges that Columbia and unnamed distributors and some named and unnamed exhibitors have engaged in somewhat similar activities in, specifically, the "greater New York metropolitan area"; that Columbia and unnamed distributors have conspired to fix the terms and conditions upon which motion pictures are licensed throughout the United States; and that Columbia, ITC Entertainment and General Cinema Corporation have entered into an agreement whereby "motion pictures produced or to be produced by ITC and distributed by Columbia have been preempted by General Cinema in every city in the United States in which General Cinema operates motion picture theatres, including those cities in which the plaintiff also operates motion picture theatres."

Columbia has filed counterclaims against the plaintiff alleging that (1) plaintiff and other exhibitors have entered into splitting agreements in certain local areas; (2) plaintiff has underreported its gross receipts for theater admissions and certain other miscellaneous charges; and (3) plaintiff has consistently failed to pay film rentals owed to Columbia.

The parties have engaged in extensive discovery in this action, and Columbia represents in its papers before us that plaintiff "has concluded its examination of Columbia's chief distribution executives and has completed discovery on all issues relating to Columbia's general distribution policies." A motion by Columbia to schedule all remaining discovery in this action presently is pending.

### 6. *Quad Cinema Corporation v. Twentieth Century Fox Film Corporation, et al., S.D. New York*

This action was commenced in late 1976 by an exhibitor which operates a theater in New York City against a number of distributors and exhibitors. The complaint alleges that, in violation of the federal antitrust laws, defendants conspired to deprive plaintiff and other independent theaters in the New York area of the opportunity "to exhibit, and to compete for the right to exhibit on earlier runs and availabilities, the feature pictures of superior quality and those having the greatest box office potential." Since this action was filed, however, the parties, with the court's active participation and approval, have engaged in focusing the issues in this action. All parties before the Panel in this action generally agree that:

> the issue in this case, distilled from the broad allegations of the complaint, is whether with respect to the licensing in lower Manhattan of approximately 125 complained of runs of 93 motion pictures, on runs other than first run, during the period November 1972 through November 1976, the defendant exhibitors and distributors entered into a conspiracy, whose object it was to favor the theatres owned or operated by the exhibitor-defendants.

The parties have engaged in extensive discovery in this action, and the court has made various rulings confining the scope of discovery to limited areas of lower Manhattan, and requiring the production of a limited variety of documents relating to specific

runs at certain theaters located in seven counties in the New York City area. Although the parties in this action were unable to meet a "target date" of June 30, 1979, for the completion of discovery, the plaintiff and the distributor defendants estimate in their papers before us that discovery can be completed "in a number of months." The New York court, however, has stayed all discovery pending the Panel's determination in this action.

7. *Lyell Theatre Corporation, et al. v. Loews Corporation, et al., W.D. New York*

and

*Lyell Theatre Corporation, et al. v. Columbia Pictures Industries, Inc., W.D. New York*

These two actions were commenced in, respectively, 1971 and 1974 by the same exhibitor (and a related entity) against many of the same distributors and exhibitors. The complaints are virtually identical except for the geographic area involved, and allege that defendants conspired, in violation of Sections 1 and 2 of the Sherman Act, to discriminate against plaintiffs and in favor of the exhibitor defendants concerning the licensing of motion pictures in, respectively, the Rochester and the Buffalo, New York areas.

The parties before the Panel agree that the Buffalo action has been informally stayed pending resolution of the Rochester action. The parties are in disagreement, however, concerning the status of pretrial proceedings in the Rochester action. Counsel for certain defendants who have moved for Section 1407 transfer in these actions, see note 2, *supra*, assert in their papers before us that discovery is "far from complete in that action." Plaintiffs and the remaining defendants before the Panel contend in their papers that the moving par-

ties' local counsel and counsel for all other parties have agreed with the magistrate handling discovery in the Rochester action that discovery has nearly been completed in this action.

8. *American International Pictures, Inc., et al. v. Price Enterprises, Inc., et al., E.D. Virginia*

This action was commenced in December, 1978, by several distributors against eight exhibitors, each of which operates at least one theater in the Norfolk-Virginia Beach, Virginia area, and an individual stockholder in these exhibitors. The exhibitors have counterclaimed against the distributor plaintiffs, and also named as defendants on the counterclaim two additional distributors, two exhibitors, Sargoy (see note 3, *supra*) and a partner in Sargoy.[7] On May 25, 1979, the district judge in this action granted a motion by plaintiffs for severance and separate trial of the complaint and the counterclaim. In his opinion and order granting severance, the judge described the allegations of the complaint and the counterclaim as follows:

> The complaint and counterclaim in the present dispute involve both separate legal and factual issues. The original complaint essentially alleges that defendants have fraudulently underreported the gross receipts of their theatres during the exhibition of motion pictures licensed from the plaintiffs. The license fees for such pictures are based upon a percentage of box office receipts. Thus, the complaint alleges defendants have not paid the full amounts properly payable under the licensing contracts. Accordingly, the substantive law of contracts and fraud of the State of Virginia will apply.

7. This counterclaim is the third of three relatively recent antitrust actions by Norfolk area exhibitors against many of the same distributors and exhibitors named as defendants in the counterclaim. The same attorney has represented the exhibitor plaintiffs (or counterclaimants) in each of the three proceedings. The

first of these proceedings was commenced in 1975 and settled prior to trial in July, 1976. In the second action, defendants recently obtained a directed verdict from the same judge before whom the Virginia action now before us is pending.

On the other hand, the counterclaim contains no allegations sounding in contract or fraud. The allegations of the counterclaim advance causes under the federal antitrust acts. Count I of the counterclaim alleges violations of Section 1 of the Sherman Act, including price-fixing, refusals to deal, bid rigging and other unlawful restraints of trade. Count II alleges an attempt to monopolize under Section 2 of the Sherman Act. Count III basically alleges a combination and conspiracy to restrain trade unlawfully and to injure defendants in the operation of their businesses. Count IV and two paragraphs of Count III allege the plaintiff distributors wrongfully combined and conspired to institute the underreporting complaint.

The claims raised in the complaint recently were tried, and on October 24, 1979, we vacated our order to show cause as moot and denied the Section 1407 motion for transfer as moot concerning those claims. No trial date has yet been established for the counterclaim.

### 9. *Paramount Pictures Corp., et al. v. Heritage Theatres, Inc., W.D. Oklahoma*

This action was commenced in October, 1978, by nine distributors against an exhibitor (Heritage) that operates several theaters in Oklahoma City, Oklahoma. The distributors, in a complaint very similar to that in the Virginia action, *supra,* allege that Heritage fraudulently underreported its box office receipts to the distributors and, accordingly, has not paid the distributors the full amount of rent due on motion pictures licensed from the distributors under their licensing agreements with Herit-

age. The distributors seek an accounting, compensatory and punitive damages, and attorneys' fees.

Heritage has filed an extensive counterclaim against the distributor plaintiffs, Sargoy, and a partner in Sargoy. Heritage's counterclaim alleges, *inter alia,* that since November, 1972, the defendants and various co-conspirators "have entered into an unlawful combination and conspiracy to unreasonably restrain and to monopolize interstate trade and commerce in motion picture films, and particularly [Heritage's] right . . . to contract for and to exhibit 'first run' feature films in the City of Oklahoma City, Oklahoma." Many of the counts of the counterclaim also focus seriatim on a distributor defendant's allegedly discriminatory conduct in denying Heritage the opportunity to license certain motion pictures, and on an alleged conspiracy among the distributors and Sargoy regarding an audit of Heritage that was conducted by Sargoy.

On August 8, 1979, the judge before whom this action is pending granted the distributors' motion to sever the counterclaim and to order separate trials of the complaint and counterclaim. No trial dates have yet been established.

## II. *POSITIONS OF THE PARTIES*

Most parties that have responded before the Panel (including all responding distributors) oppose transfer of any of the actions presently before us. The parties that favor transfer of one or more actions are as follows: (1) ten exhibitors [8] who are parties in *Stein, General Cinema,* the Southern District of New York action or the two Western District of New York actions favor transfer of those actions; [9] (2) plaintiffs in

---

**8.** Some of these parties describe themselves in their papers before us as "exhibitor-affiliated former distributors."

**9.** Five of these exhibitors are defendants in *Stein*; two are defendants in the Southern District of New York action; two are defendants in each of the two Western District of New York actions; and one is the plaintiff-counterclaim defendant in *General Cinema.*

These ten exhibitors, along with five additional exhibitors that are plaintiffs in *AMC,* originally favored transfer of *AMC.* These exhibitors recently withdrew their support of transfer in *AMC* because of "the possibility of conflict if . . . *AMC* . . . were transferred. . . ." It should be noted that each of these fifteen exhibitors is represented by the same counsel. This counsel also repre-

the Western District of New York action that focuses on the Buffalo market area favor transfer of that action, since little or no discovery has taken place in that action; (3) plaintiffs' steering committee in the transferee district favors transfer of *AMC* and *General Cinema*, "conditioned upon a finding by the Panel that the parties, after [transfer], can be properly aligned to reflect their true interests in the litigation"; (4) the defendants-counterclaimants in the Virginia action favor transfer of the counterclaim in that action, but have offered no arguments in support of this position; and (5) the defendant-counterclaimant in the Oklahoma action favors transfer of that action.

## III. *HOLDING*

On the basis of the papers filed and the hearing held concerning these ten actions, we recognize that at least some of the actions before us and the actions in the transferee district share questions of fact on the economic and conspiratorial issues, particularly regarding the manner in which film distribution decisions are made in the motion picture industry. Nevertheless, we are persuaded that transfer of the actions before us under Section 1407 would not necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of these actions and/or the previously transferred actions. Accordingly, we deny the motion to transfer the Western District of New York actions, and vacate our orders to show cause in the remaining eight actions.

## IV. *THE QUESTION OF TRANSFER*

The ten exhibitors that favor transfer of five of the actions now under consideration argue that the allegations of the complaints and the pretrial status of these five actions render these actions clearly appropriate for transfer under the guidelines established by the Panel in this litigation. See *In re Motion Picture Licensing Antitrust Litigation,*

*supra,* 468 F.Supp. 837. These exhibitors urge the Panel to dismiss the objections to transfer of the five actions that have been made to the Panel by numerous parties based on (1) the fact that the complaints in many of the actions focus on a limited geographic area, and (2) the status of discovery and other pretrial proceedings in these actions. In response to these objections, these exhibitors argue that (1) the Panel has already expressly held that many of the previously transferred actions, which also alleged or eventually focused on local conspiracies, were appropriate for transfer, see *id.* at 839–42; and (2) the record before the Panel, as well as status reports submitted to Judge Singleton in the transferee district, reflect that pretrial proceedings in many of the previously transferred actions are at least as advanced as pretrial proceedings in the potential tag-along actions in which these exhibitors are involved.

These exhibitors point out that the Panel, in ordering transfer, stressed that "[t]he national conspiracy alleged . . . in the Utah action necessarily encompasses many aspects of the somewhat more limited conspiracies alleged in many of the other actions before us." *Id.* at 841. Similarly, these exhibitors contend, the nationwide allegations of the complaint in *General Cinema,* see *supra* at 584, supply a further unifying theme to this litigation. These exhibitors argue that the allegations in *General Cinema* concerning the alleged fixing of theater admission prices will necessitate discovery concerning practices and activities undertaken either throughout, or in a substantial number of competitive market areas in, the United States, and that this type of national discovery could easily be encompassed by the national discovery program ordered by Judge Singleton in the transferee district.

The counterclaimant in the Oklahoma action contends that the complaint in this action, although brought by distributors under the guise of an action seeking to recov-

sents some of these exhibitors as defendants in the transferee district, as well as two additional

exhibitors that are named as defendants in some of the previously transferred actions.

er for the underreporting of theater admission receipts, is simply one invidious but integral aspect of a conspiracy between, primarily, the distributors and Sargoy to fix and control the terms, prices and conditions of the licensing of motion picture films and to monopolize the market in the distribution and exhibition of first run films. The counterclaimant notes that similar allegations already are involved in at least one action in the transferee district (the Tennessee action previously transferred by the Panel), and that plaintiffs in the transferee district presently are seeking leave to add Sargoy as a defendant.

Thus, this counterclaimant argues, transfer of the Oklahoma action would prevent duplicative discovery, eliminate the possibility of conflicting pretrial rulings, and conserve time and effort of the parties, the witnesses and the judiciary.

We find these arguments unconvincing. Initially, we note that in our earlier opinion and order in this litigation we excluded two actions from transfer because of the advanced status of pretrial proceedings in those actions. *In re Motion Picture Licensing Antitrust Litigation, supra,* 468 F.Supp. at 838 n. 1, 842. We have concluded that some or all claims raised in many of the actions now before us are also inappropriate for transfer, either because discovery and other pretrial proceedings are well advanced in those actions, and/or because the parties in those actions have expressed before us their lack of interest in the "national" or "common" discovery that Judge Singleton has determined should presently serve as the focus of the consolidated pretrial proceedings in the transferee district. The purposes of Section 1407 would clearly not be accomplished by transferring actions which are nearly resolved, or by requiring parties who have no interest in the consolidated pretrial proceedings to reap only delay and other inconvenience as a result of transfer.

Discovery in the Southern District of New York action and in the Florida action has been restricted by court order to a limited geographic area and is extremely well along. In addition, all responding parties in the Florida action have disclaimed any interest in conducting any of the remaining discovery on other than a purely local level. Similarly discovery in the Massachusetts action is, on the basis of the record before us, nearing completion. In addition, we have been advised by Columbia, one of the two defendants in this action, that any potentially relevant discovery concerning Columbia's distribution policies and the practices has been completed, and that the remaining discovery relates exclusively to local issues and local market areas. No other party in the Massachusetts action has disputed this representation. Finally, although there is some dispute on the record before us with regard to the amount of discovery yet to be accomplished in the Western District of New York action concerning the Rochester market area, we are persuaded that the remaining discovery will be concluded shortly and is of a local nature. We note that this action has been pending for eight years.

Although the status of pretrial proceedings concerning the counterclaim in the Virginia action is not, on the basis of the record before us, sufficiently advanced alone to support a denial of transfer of the counterclaim, we are convinced that the counterclaim can be resolved most expeditiously in the Eastern District of Virginia. As we have already noted, see note 7, *supra,* the judge who severed the complaint and the counterclaim in the Virginia action has had a unique opportunity from previous litigation to become thoroughly familiar not only with the allegations of the counterclaim and with the motion picture industry as it pertains to the Norfolk, Virginia area, but also with many of the parties and counsel involved in the Virginia counterclaim. Under these circumstances, we are confident that the Virginia court will quickly and efficiently dispose of the counterclaim.

We also find that neither the convenience of the parties and witnesses nor the just and efficient conduct of the Western District of New York action that focuses on the Buffalo market would be enhanced by

Section 1407 transfer. Some of the defendants have represented in their papers before us, and no party has disputed before us, the following:

[I]t has been the understanding of all parties that further discovery in the Buffalo action is to await final determination in the Rochester action. The legal and factual issues raised in the Buffalo action are similar to those in the Rochester action, and it has been decided upon by counsel to both actions that discovery in the Rochester action should be completed and the action tried before any further proceedings are conducted in the Buffalo action. The basis for this agreement has been that a determination of the Rochester action may be dispositive of the issues raised in the Buffalo action and, therefore, would possibly vitiate any further proceedings in that action.

We are of the view that it would be counterproductive to disturb the course of conduct allegedly agreed upon by all parties concerning the Buffalo action. This conclusion is strengthened by the fact that both Western District of New York actions presently are assigned to the same judge who, from his familiarity with the nearly completed Rochester action, is in the best position to ensure the expeditious disposition of the Buffalo action.

We find that the claims raised in the complaints in *General Cinema* and the Oklahoma action are inappropriate for Section 1407 transfer because the complaints in those two actions and the pleadings in the previously transferred actions raise fundamentally different factual questions. Buena Vista is the sole defendant in *General Cinema*, and none of the actions in the transferee district involves the minimum per capita royalty provision allegedly used in Buena Vista's license agreements with exhibitors.[10] Similarly the complaint in the Oklahoma action focuses on unique issues involving Heritage's allegedly fraudulent underreporting of its gross receipts concerning particular films exhibited in the Oklahoma City, Oklahoma area. Thus we conclude that individual, rather than common, factual issues predominate in *General Cinema* and in the complaint in the Oklahoma action vis-a-vis the previously transferred actions.

Remaining before us for disposition are *AMC, Stein,* and the counterclaims in *General Cinema* and the Oklahoma action. While *AMC, Stein* and the counterclaims in the other two actions raise some unique factual issues, we recognize that *AMC, Stein* and these counterclaims share questions of fact with the previously transferred actions. We find the following thoughts from the concurring opinion in *In re "East of the Rockies" Concrete Pipe Antitrust Cases,* 302 F.Supp. 244, 254 (Jud.Pan.Mult. Lit.1969), however, to be particularly instructive here:

The statutory objectives are not necessarily served by requiring joint pretrial whenever some—even many—questions of fact are common to a large number of cases. In some such cases, if not in these at hand, coordination and consolidation may impair, not further, convenience, justice and efficiency. To put it in other words, neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, *ipso facto,* by transfer just because there are common questions of fact in the civil actions involved.

In our earlier opinion and order in this litigation, we noted that each action then before us involved some unique, localized issues, *In re Motion Picture Licensing Antitrust Litigation, supra,* 468 F.Supp. at 841, we express our concern that Section 1407 transfer might cause some parties to suffer a degree of inconvenience, *id.* at 842. Nevertheless, we concluded that transfer was warranted so that the parties would be given an opportunity to engage in centralized discovery and other pretrial proceedings concerning whether, *inter alia,* as the

---

10. We also note that even the proposed unified and consolidated complaint in seven of the previously transferred actions does not specifically challenge the legality of this aspect of Buena Vista's licensing agreements.

proponents of transfer then before us argued, " 'regional decisions are made or approved (tacitly or overtly) on a national level' . . . [and] particular minimum terms and licensing policies for any given film are 'inaugurated and substantially controlled' by supervisory and headquarters personnel." *Id.* at 841. This opportunity is now set in force under the close supervision of Judge Singleton, and the fruits of that process will become a matter of record, regardless of our decision today. Thus, we are convinced that the inclusion at this time in the consolidated pretrial proceedings in the transferee district of additional actions or claims, with, in significant part, their attendant unique legal and factual nuances, would serve only to add further layers of complexity to those proceedings, without providing any overriding benefit.

Finally, we note the following argument of the opponents of transfer:

> Unlike lawsuits arising out of a common disaster or a group of nearly identical antitrust class actions filed at one point in time, the motion picture distribution cases represent a continuing stream of commercial disputes. . . .[11] [We fear] that a high percentage of this continuing series of unrelated disputes will be transferred for 'coordinated' or 'consolidated' pre-trial proceedings in the Southern District of Texas to the great inconvenience of all parties involved and to the great burden of that District. . . . The frequency with which cases of this sort are filed makes it difficult to foresee that there will ever come a time when pre-trial discovery in all of the transferred and 'tag-along' cases will be concluded. . . .

We, of course, are vitally concerned that pretrial proceedings in the transferee district remain manageable, and that those proceedings move expeditiously toward conclusion. In light of the special circumstances of this docket, we are convinced that at present the most efficacious manner in which the parties in the transferee district can resolve, at least for purposes of pretrial proceedings, the common questions of fact on the economic and conspiratorial issues is to allow those parties to proceed, unencumbered by the addition of new issues in additional actions or claims, along the course established, and to be further refined, by Judge Singleton.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the Panel's orders to show cause filed with respect to the actions entitled

*American Multi-Cinema, Inc., et al. v. Motion Picture Association of America, Inc., et al.,* C.D.California, C.A. No. CV–79–1703–DWW

*Fred Stein, et al. v. United Artists Corporation, et al.,* C.D.California, C.A. No. CV79–2137–WPG;

*General Cinema Corp. v. Buena Vista Distribution Co., Inc.,* C.D.California, C.A. No. CV78–3284–LTL(Kx);

*Holiday Theatres, Inc. v. Wometco Enterprises, Inc., et al.,* S.D.Florida, C.A. No. CV78–2420–Civ–JAG;

*Quad Cinema Corp. v. Twentieth Century Fox Film Corp., et al.,* S.D.New York, C.A. No. 76 Civ. 4452;

*National Amusements, Inc. v. Columbia Pictures Industries, Inc., et al.,* D.Massachusetts, C.A. No. 77–155–Z;

*Paramount Pictures Corp., et al. v. Heritage Theatres, Inc.,* W.D.Oklahoma, C.A. No. Civ–78–01115–D; and

*American International Pictures, Inc., et al. v. Price Enterprises, Inc., et al.,* E.D. Virginia, C.A. No. 78–651–N,

be, and the same hereby are, VACATED.

IT IS FURTHER ORDERED that the motion pursuant to Section 1407 to transfer the actions entitled *Lyell Theatre Corp., et al. v. Loews Corporation, et al.,* W.D.New York, C.A. No. 1971–571; and *Lyell Theatre Corp. v. Columbia Pictures Industries, Inc., et al.,* W.D.New York, C.A. No. 1974–132, to the Southern District of Texas be, and the same hereby is, DENIED.

---

11. Some of these parties state that since 1969 at least 96 antitrust actions have been commenced that involved motion picture distribution practices and named three or more distributors as defendants.