**VAN SCIVER v. ROTHENSIES, Collector of Internal Revenue.**

**No. 7704.**

Circuit Court of Appeals, Third Circuit.

Sept. 3, 1941.

George P. Orr, of Philadelphia, Pa. (T. F. Dixon Wainwright, John W. Bohlen, and Orr, Hall & Williams, all of Philadelphia Pa., on the brief), for appellant.

Carolyn E. Agger, Sp. Asst. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thos. J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on the brief), for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

The appellant taxpayer, as often, has elected to come to us through the District Court rather than through the Board of Tax Appeals.[1] He complains of the imposition of additional tax ($3,661.15) on income which he says is not his but his son's. This claim emanates from a paternal "rescue party." The son, Earl J. Van Sciver, had borrowed money from a bank. The collateral against this loan, along with most collateral, had gone below the financial Plimsoll mark. So father, George D. Van Sciver loaned his son $10,000 worth of bonds to be deposited under the account. At the next shrinkage (1933) the same thing happened to the collateral but something different was done about it. Out of that something different arises this litigation.

On November 1, 1933, appellant bought his son's securities from the bank for the amount of the loan. Two years later the account was closed out by the sale of these same or substituted securities. This sale realized a balance of $12,979.07 after the father had been fully reimbursed. The son did and the father did not include this profit in his personal income tax return for 1935. Appellant can justify his position only if the "arrangement" between father and son is either (1) a loan, (2) an option to repurchase, or (3) an irrevocable trust.

---

[1] For a discussion of the inefficiency of the various and confusing remedies open to a taxpayer, see Fox v. Rothensies, 3 Cir., 115 F.2d 42.

■ We are rather surprised at the vagueness of the testimony concerning this "arrangement." At the time of the trial, the father was in Arizona for his health and so could not give verbally the learned District Judge the benefit of his recollections. After all, however, the Federal Rules of Civil Procedure provide quite specifically for the taking and use of depositions and the old gentleman came within two of the categories there prescribed.[2] We are, therefore, forced to rely principally upon the evidence given by young Mr. Van Sciver, which we now quote:

"A. I went to his office in the Provident Trust Company and asked him if he would be willing to buy these identical securities in for my account and carry them until—and allow me to manage the account as well—until such time as I could repay at least the ten thousand dollars, which I doubt which—which I couldn't at that time, under the belief that the securities were selling below the value which they should sell and that I could make a profit out of the transaction, which he agreed to do.

"Q. And what was the arrangement that you then made with your father regarding these securities? A. He was to take the interest as—the income of these securities as interest, and at the final conclusion of the arrangement I was to receive the profit or be indebted to him for any loss incurred in the transaction.

"Q. After the repayment of the moneys which he had put up? A. Which he had put up to buy the bonds.

"Q. Who superintended this account from that time on? A. I superintended it." Appendix pp. 21, 22.

"Q. * * * did you have an understanding with your father, Mr. George D. Van Sciver, that he was to loan you the money to purchase these bonds, or was the purchase made by him? A. The purchase was made by him for my account.

"Q. And there was no understanding as to any loan to you? A. Loan? No." Appendix p. 28.

Besides this testimony, the record indicates two other factors. First, a loss was claimed by appellant on some of the securities sold in 1933. Second, on September 26, 1934, an entry was made in appellant's books in which the securities were entered under the heading "Earl J. Van Sciver Bond Account" with this notation:

"The above bonds which were bought Nov. 1, 1933, were to be held or sold for Earl J. Van Sciver. Any profit or loss on sales is to be credited or charged to him. Interest on the Bonds is to be retained by Geo. D. Van Sciver as interest on the money invested by him in the bonds. The bonds are therefore transferred to a separate Earl J. Van Sciver Bond Account." Appendix p. 9.

While difficulty is encountered in attempting to place this informal arrangement in a category of legal relationship, the appellant's intent is obvious. He wished to assist his son and at the same time retain some strings upon the securities. Had he not desired to keep some ties on the bonds he would have lent or given his son the funds necessary for their purchase or he would have turned the bonds over outright to his son. Instead he kept the securities in his own possession and took the interest thereon "as interest on the money invested by him in the bonds." These circumstances lead to the belief that appellant substituted himself in place of the bank as his son's creditor—that he intended a loan and held the securities as collateral for the debt.[3] But the notation in appellant's books does not indicate a loan. Furthermore, the son's testimony, above quoted, shows clearly that the relationship was not that of debtor and creditor.[4]

■ The equivocal nature of the father and son transaction is, in our judgment, completely dispositive of appellant's other two theories. Any contract with respect to purchase, whether by way of option or whether original or repurchase, as it is a bargain, must include the terms thereof. Here we have no mention of dates, price or method. Likewise, an obligation to give away one's property, whether by means of trust or otherwise, is not to be presumed. On the contrary,

---

2 "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * that the witness is at a greater distance than 100 miles from the place of trial or hearing, * * * that the witness is unable to attend or testify because of age, sickness, infirmity * * *." Rule 26(d) (3), 28 U.S.C.A. following section 723c.

3 If such were the case, the profit would be taxable to the borrower, the son. Stranahan v. Com'r, 6 Cir., 42 F.2d 729, certiorari denied, 283 U.S. 822, 51 S.Ct. 346, 75 L.Ed. 1437.

4 Appendix p. 28.

the beneficiary has the burden of proof and that proof must be of a particularly satisfactory character. Both the textbooks and the cases are insistent on that point and prescribe adjectives leaving no room for mental hesitation.[5] As the learned District Judge indicates, those selected by the Pennsylvania cases are "clear," "precise," "indubitable" and "unequivocal."[6]

 If it were necessary to affirmatively label the taxpayer's transaction, we should call it a gift or assignment in the future.[7] The words found in the accountant's notation that "the above bonds which were bought Nov. 1, 1933, were to be held or sold for Earl J. Van Sciver" accord with this view. Since there was no loan, the retention of bond interest by the appellant indicates that he intended to convey no present interest. The arrangement appears to be that the profits, if and when they accrued, were to be assigned to appellant's son.[8] Until then the son had no enforceable rights in the proceeds. Therefore until the assignment was made, profit from the sale of the bonds was taxable to the appellant.[9]

The judgment of the District Court is affirmed.

[5] 65 C.J., Trusts, § 85; 1 Bogert, Trusts and Trustees § 49; 1 Perry, Trusts and Trustees § 86; Degree or Intensity of Parol Proof Necessary To Establish A Trust, 23 A.L.R. 1500; Trust—Voluntary Trust As Distinguished From Gift and Testamentary Disposition, 26 Michigan Law Review 834.

[6] Rocks v. Sheppard, 302 Pa. 46, 152 A. 754; Washington's Estate, 220 Pa. 204, 69 A. 747; Tuttle's Estate, 132 Pa. Super. 356, 200 A. 921.

[7] No trust may be created where the manifestation of intention is to create a future disposition. American Law Institute Trust Restatement, Vol. 1, § 26; 1 Scott, Trusts § 26; Trusts—Validity—Subject Matter—Profits to be Acquired in the Future, 36 Michigan Law Review 1041.

[8] In this respect the transaction is similar to Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, wherein the grantor was held taxable.

"The Horst decision determines * * * that economic gain will not escape taxation because the money payment representing that gain is assigned to another. The assignor is thus to be taxed on his income notwithstanding the assignment." Surrey, The Supreme Court and the Federal Income Tax: Some Implications of the Recent Decisions, 35 Illinois Law Review 779, 786, 787.

The case is noted in Taxation—Federal Income Tax—Intangible Satisfaction From Gift as Income to the Donor, 39 Michigan Law Review 495; Taxation—Federal Income Taxation—Taxable Income Held Realized by Donor of Right to Future Income, 41 Columbia Law Review 340; Income Taxes—Donor Liable for Tax on Income From Detached Interest Coupons, 27 Virginia Law Review 394; Taxation—Liability of Donor For Income Accruing Upon Chose in Action After Transfer, 89 University of Pennsylvania Law Review 532; Hoffman, Taxation—Federal Income Tax—Assigned Income—To Whom Taxed, 19 Texas Law Review 489.

[9] "If the agreement is that the assignor shall receive the income and then pass it to the assignee, the assignor is taxable." Taxation—Income Tax Assigned Future Income—Who Is Taxable, 20 California Law Review 573. The vital inquiry is whether the property producing income has been assigned or merely the income from the property. In the former case, the donee is taxable; in the latter, the donor. Surrey, Assignments of Income and Related Devices; Choice of the Taxable Person, 33 Columbia Law Review 791; Taxation—Income Taxation—Income From Assigned Interests Taxable to Assignor, 25 Minnesota Law Review 537. For taxation purposes an assignment of future income is treated in the same manner as a trust of which the settlor remains the substantial owner. See Irrevocable Trusts and the Federal Income Tax, 49 Yale Law Journal 1305.