**19TH STREET BAPTIST CHURCH,**
**et al., Plaintiffs,**

**v.**

**ST. PETERS EPISCOPAL CHURCH,**
**et al., Defendants.**

**No. CIV A 99–5085.**

United States District Court,
E.D. Pennsylvania,
Philadelphia Division.

Jan. 4, 2000.

Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for Plaintiffs.

Joseph J. Mc Alee, Sprague & Sprague, Philadelphia, PA, Theodore J. Chylack, Philadelphia, PA, for St. Peters Episcopal Church.

Jane C. Silver, Mary Ann Mullaney, Blank Rome Comisky & McCauley LLP, Philadelphia, PA, for First Union Bank.

James M. Prahler, Margolis, Edelstein, & Scherlis, Philadelphia, PA, for Episcopal Diocese of Pennsylvania.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. BACKGROUND

Plaintiffs are the 19th Street Baptist Church, (the "Church") located at 19th & Titan Streets, Philadelphia, PA, and five individual members of the Church who are also residents of the surrounding community (collectively "plaintiffs"). All of the individual plaintiffs are African–Americans. Defendants are the St. Peters Episcopal Church, the Episcopal Diocese of Philadelphia, PA, and First Union Bank (collectively "defendants"). Defendants are alleged to have violated plaintiffs' rights under the Thirteenth and Fourteenth Amendments as well as 42 U.S.C. §§ 1981, 1983, and 1985.

This case involves the ownership and disposition of certain proceeds of a trust instrument (the "Trust") executed in the late nineteenth century by Ms. Margaretta Lewis. According to plaintiffs' complaint, Ms. Lewis executed a will which provided, in part, that upon her death, the Trust was to be established to fund religious activities for the benefit of the community surrounding the Church. The St. Peters Episcopal Church was initially appointed trustee of the Trust. First Union later succeeded St. Peters in that position. The complaint alleges that in approximately 1945, the church building was sold to the Church. The complaint also alleges that in the process of selling the church building to the Church and obtaining approval to do so from the Orphans Court of Philadelphia County, PA, St. Peters (and the Episcopal Diocese) failed to notify the surrounding community of the Orphans Court proceeding and of the existence of the Trust because "the community [was now comprised of] African–Americans and/or Italians." As a direct result of defendants' actions, according to the complaint, the principal was invaded and the proceeds of the Trust were diverted from the community and the Church to defendants. Defendants have moved to dismiss the complaint on sundry jurisdictional grounds.

Before initiating this action, plaintiffs filed a complaint in the Philadelphia County Court of Common Pleas setting forth several causes of action, all but one of which is identical to those asserted in this case.[1] Defendants filed preliminary objections to plaintiffs' state court complaint. The Court of Common Pleas granted the preliminary objections and dismissed plaintiffs' complaint. Plaintiffs have appealed the dismissal of the complaint to the Pennsylvania Superior Court and the appeal is currently pending. After they commenced the state action, but before the Common Pleas Court dismissed their complaint, plaintiffs brought the present action in this court.

Plaintiffs now seek to take the depositions of the four individual plaintiffs in this action, who are between the ages of 86 and 91,[2] arguing that because these plaintiffs are aged and infirm and more immediately subject to death or illness, they may not be available to testify at trial. According to counsel's certification, the witnesses will testify that they were involved in Church affairs in 1944 and 1945 and were aware of the Church's purchase from defendants, the Church and community were never notified of the Trust's existence or the Orphans Court proceedings, and the assets of the Trust would have been used to serve the religious needs of the community. (Plaintiffs' Counsel's Certification, Pl.'s Mem., Ex. C). In short, plaintiffs would testify that if the Church had received notice from defendants of any proposed modification of the

---

1. Plaintiffs' state court action included claims under the Thirteenth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1981 & 1983, and state law claims for breach of fiduciary duty and a resulting trust. The thrust of plaintiffs' complaint was that defendants unlawfully diverted the funds of the Trust from its intended beneficiaries because of those beneficiaries' race and ethnic origin. (State Court Memorandum Opinion, Nov. 15, 1999)(Sheppard, J.). The claim absent from plaintiffs' state complaint, but included in their federal complaint, is a claim brought under 42 U.S.C. § 1985 alleging that defendants opposed plaintiffs' discovery request in the state court on the basis of plaintiffs' race.

2. The individual plaintiffs whom plaintiffs' counsel wishes to depose are Deacon Hezikiah Menigualt, Sister Elise Wilson, Deaconess Eunice Eades, and Sister Lucille Wilkerson.

Trust, they would have been in a position to object to the modification, and that no such notice was given. In response to plaintiffs' request, defendants seek a protective order barring these depositions on the basis that they should not be put to the expense and burden of preparing for and attending the depositions prior to this court ruling on their jurisdictional defenses, that it would be unfair to be required to defend these depositions at this early point in the litigation before the issues are framed, and that the state court has already denied plaintiffs' request to perpetuate their testimony on two prior occasions.

Separately, plaintiffs seek a stay of these federal proceedings, except for the individual plaintiffs' depositions, until the state court action currently on appeal is resolved. Defendants oppose the stay and request that the court rule on their pending motions to dismiss. In other words, plaintiffs wish to stay these proceedings, but want to take the individual plaintiffs' depositions immediately. Defendants, on the other hand, request that all discovery be stayed until the court rules on their motions to dismiss.

For the following reasons, the court concludes that: (1) plaintiffs' motion to stay the proceedings pending resolution of the state action currently on appeal will be denied; and (2) plaintiffs' motion for immediate discovery will be granted. The court will permit the depositions of the four plaintiffs in order to perpetuate their testimony on the condition that before the depositions are taken, plaintiffs satisfy the initial disclosure requirements of Federal Rule of Civil Procedure 26(a)(1), produce a detailed proffer setting forth the expected testimony of each plaintiff deponent together with copies of any documents plaintiffs will rely upon at their depositions, and afford defendants the opportunity to take a discovery deposition of each plaintiff deponent.

## II. DISCUSSION

### A. *Perpetuation of Testimony*

■ To perpetuate the testimony of a witness means to record, prior to trial and for use at trial, the witness' known testimony in a case where the witness may be unavailable for trial. *See In re Petition of Randy Banks,* 1993 WL 502379, *1 (N.D.Ill.1993)(noting that 'perpetuation' means "the perpetuation of known testimony"). The concept of perpetuation of testimony has ancient roots deeply grounded in equity. *See* Nicholas A. Kronfeld, *The Preservation and Discovery of Evidence under Federal Rule of Civil Procedure 27,* (Note) 78 GEO. L.J. 593, 593–94 (1990) (tracing perpetuation of testimony to ancient Greece).

Under the Federal Rules of Civil Procedure, a request to perpetuate testimony triggers slightly different procedures and entitles the party seeking to perpetuate the testimony to different rights depending upon the stage of the litigation at which the request is made. The parties disagree as to whether Federal Rule of Civil Procedure 26 or 27 controls in this case. A request to perpetuate testimony before a law suit is commenced is governed by Rule 27(a).[3] *See Mosseller v. United States,* 158 F.2d 380, 382 (2d Cir.1946). For Rule 27 to apply, a petitioner "must demonstrate a need for [the testimony or evidence] that cannot easily be accommodated by other potential witnesses," must show that the testimony is "relevant, not simply cumulative," and must convince the court that the evidence sought "throws a different, greater, or additional light on a key issue." *Deiulemar v. Allegra,* 198 F.3d 473, 486–87 (4th Cir.1999). A rule 27 deposition is not to be used as a substitute for pretrial discovery, and does not license a prospective plaintiff to engage in a "wholesale fishing expedition." *See In re Randy Banks,* 1993 WL 502379 at *1; *Deiulemar,* 198 F.3d at 485–86. "Before a district court can order the perpetuation of testimony [under Rule 27], the court must be satisfied that the perpetuation of the testimony may prevent the failure or delay of justice." *Deiulemar,* 198 F.3d at 486.

Conversely, perpetuation of testimony

---

**3.** Rule 27(a)(1)(3) provides, in pertinent part, "If the court is satisfied that the perpetuation of the testimony may prevent a failure or delay of justice, it shall make an order designating or describing the persons whose depositions may be taken . . . ." Fed.R.Civ.P. 27(a)(1)(3).

pending appeal is governed by Rule 27(b).[4] The same policy considerations that inform the court's judgment under Rule 27(a) also govern the court's discretion under Rule 27(b). *See Ash v. Cort,* 512 F.2d 909, 912 (3d Cir.1975). In other words, Rule 27(b), like its Rule 27(a) counterpart, is also not a substitute for discovery and its application must likewise be grounded primarily in the need "to avoid any failure or delay of justice." *Id.* (*quoting* Fed.R.Civ.P. 27(b)); *see also Williams v. Moody,* 1999 WL 320914, *1 (E.D.Pa.1999).

Once a party has commenced a lawsuit, but before an appeal is taken, perpetuation of testimony is governed not by Rule 27, but by the interplay of Rules 30 and 26. Rule 30[5] provides, in relevant part, that a party may take the deposition of any person, including a party, without leave of court, provided the parties have conferred as instructed by Rule 26(f)[6] and have produced their initial disclosure material as required by Rules 26(a)(1)[7] and 26(d).[8] Rule 26 permits a party to take his own deposition without leave of court. *See* 8A WRIGHT, MILLER & MARCUS: FEDERAL PRACTICE & PROCEDURE § 2102 (*citing Van Sciver v. Rothensies,* 122 F.2d 697 (3d Cir.1941)). The scope of such a

deposition is governed by Rule 26(b)(1).[9] Since perpetuation of testimony is sought in a case now pending, Rule 26 is the applicable rule in this case.

An opposing party wishing to prevent a deposition designed to perpetuate testimony after a lawsuit has begun may seek a protective order. *See* Fed.R.Civ.P. 26(c).[10] The party seeking the protective order must demonstrate "good cause." *Id.* In other words, the burden is on the party seeking to bar an otherwise validly noticed deposition to show that the discovery should not be held, or if held at all, should be so conditioned as to avoid or minimize prejudice or expense to the party seeking the protective order. *See e.g., Ganem v. Greene,* 31 F.R.D. 175, 176–77 (W.D.Pa.1962) (conditioning taking a deposition to perpetuate testimony in a pending lawsuit upon payment of certain expenses by petitioner); *In re Motion Picture Litigation,* 479 F.Supp. 581, 582 (Judicial Panel on Multidistrict Litigation 1979)(permitting only those depositions "that are absolutely necessary for either discovery or perpetuation of testimony" after commencement of a lawsuit).

---

4. Rule 27(b) provides, in pertinent part, "If an appeal has been taken from a judgment of a district court or before the taking of an appeal if the time therefor has not expired, the district court in which the judgment was rendered may allow the taking of the depositions of witnesses to perpetuate their testimony for use in the event of further proceedings in the district court." Fed. R.Civ.P. 27(b).

5. Rule 30(a)(1) provides, in pertinent part, "A party may take the deposition of any person, including a party, by deposition upon oral examination without leave of court except as provided in paragraph (2)." Fed.R.Civ.P. 30(a)(1). A party must obtain leave of court to take a deposition if "a party seeks to take a deposition before the time specified in Rule 26(d) unless the notice contains a certification, with supporting facts, that the person to be examined is expected to leave the United States and be unavailable for examination in this country unless deposed before that time." Fed.R.Civ.P. 30(a)(2)(C).

6. Rule 26(f) provides, in pertinent part, "[T]he parties shall meet as soon as practicable and in any event at least 14 days before a scheduling conference is held or a scheduling order is due under Rule 16(b) meet to discuss the nature and basis of their claims and defenses and the possi-

bilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by subdivision (a)(1), and to develop a proposed discovery plan." Fed.R.Civ.P. 26(f).

7. *See* Rule 26(a)(1)(outlining materials a party must disclose without request).

8. Rule 26(d) provides, in pertinent part, "Except when authorized under these rules or by local rule, order, or agreement of the parties, a party may not seek discovery from any source before the parties have met and conferred as required by subdivision (f)." Fed.R.Civ.P. 26(d).

9. Rule 26(b)(1) provides that generally, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to subject matter involved in the pending action ...." Fed. R.Civ.P. 26(b)(1).

10. Rule 26(c) provides, in pertinent part, "Upon motion by a party ... and for good cause shown, ... the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...." Fed.R.Civ.P. 26(c).

Whether Rule 26 or Rule 27 applies, and no matter the procedural posture of the case, the common purpose informing both rules militates in favor of allowing perpetuation of testimony of a person when it is uncertain that that person will be available at trial. *See Texaco v. Borda*, 383 F.2d 607, 609 (3d Cir.1967) (modifying the district court's stay of litigation pending the outcome of a parallel criminal trial to allow the taking of a deposition of a 71 year old plaintiff by defendant).

### B. Defendants' Evidence of "Good Cause"

Defendants' principal contention in seeking to bar plaintiffs' depositions is that because there is a serious question concerning the court's jurisdiction to hear this case, they should not be subject to the expense of preparing for and attending the depositions until their challenges to the court's jurisdiction have been adjudicated. In support of this argument, defendants point to principles of federalism and comity and invoke the venerable doctrines of abstention,[11] *Princess Lida*,[12] and *Rooker–Feldman*[13] as dispositive of the question of the court's jurisdiction in this case. Further, defendants predict that principles of res judicata and the application of the statute of limitations are likely to resolve this case in their favor on the merits.

Plaintiffs answer defendants' contentions by pointing to the advanced ages of the putative deponents, noting that while this matter is adjudicated in this court initially and likely on appeal, there is a strong likelihood that these witnesses' testimony will dissipate due to death or disability. Plaintiffs claim that the witnesses' testimony is crucial to at least one key issue in the case. In the event that the witnesses become unavailable for trial, plaintiffs argue, their meritorious

claims would be stripped of their evidentiary support and a miscarriage of justice would ensue.

While the court should not automatically stay discovery because a motion to dismiss has been filed, "a stay is proper where the likelihood that such motion may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay." *Weisman v. Mediq, Inc.*, 1995 WL 273678, *2 (E.D.Pa.1995). In other words, the court should carefully balance the relative benefit and harm that would ensue to each party from the grant or denial of a stay.

With this teaching in mind, the court will attempt to calibrate the appropriate factors. On the one hand, defendants' motions present a viable challenge to the court's jurisdiction. Accordingly, it is likely that a ruling on their motions will narrow or completely eliminate discovery in this case. *See id.* Yet, even if defendants' jurisdictional challenges succeed, a decision in their favor will not come for some time given the complex issues the court must address and likely appeal that would follow if a dismissal is granted. On the other hand, plaintiffs' proffered testimony appears relevant, not cumulative, and likely to shed a different, greater, or additional light on the key issue of notice in this case. If this testimony is lost due to death or infirmity, plaintiffs effectively would be put out of court. Thus, while the stay of discovery would be potentially fatal to plaintiffs, proceeding with plaintiffs' depositions would only be burdensome to defendants. Finally, the expense defendants will incur is relatively modest in this case, and defendants are apparently well healed entities represented by able counsel.[14]

---

**11.** Defendants St. Peter's and First Union argue that the court should abstain under the doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**12.** *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

**13.** *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *see also District of Columbia Court of Appeals v. Feldman*,

460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

**14.** One public interest factor also counsels in favor of permitting these depositions. Plaintiffs are all African–Americans who, at least as the complaint is pleaded, are asserting civil rights claims on the basis of race under the 13th and 14th Amendments. These claims implicate the federal courts' special competence and institutional responsibility for safeguarding the rights of blacks under the Reconstruction Amendments. The loss of probative testimony, if that were to

After balancing the potential expense to defendants against the risk to plaintiffs that critical testimony may be lost forever, the court concludes that defendants have failed to show "good cause" why this limited discovery should not occur.

The case most comparable to this one is *Texaco v. Borda*, 383 F.2d 607 (3d Cir.1967). *Borda* involved a private antitrust action brought by the plaintiff, Charles A. Borda, against Texaco. The private action was pending while parallel criminal proceedings were prosecuted against Texaco. The district court stayed the civil antitrust action pending conclusion of the criminal prosecution. Texaco subsequently sought to modify the stay to allow it to perpetuate Mr. Borda's testimony in the civil action prior to the conclusion of the criminal prosecution. Texaco argued that Mr. Borda was 71 years old, and therefore, there was a risk that due to his age, Mr. Borda may not be available to testify at trial. The district court denied the request, noting that Mr. Borda's age was "meaningless." Texaco then sought a writ of mandamus modifying the absolute stay to permit Mr. Borda's deposition to proceed.

The Third Circuit agreed with Texaco and granted Texaco's request for permission to depose Mr. Borda. In its decision, the Third Circuit noted that Mr. Borda's age, indeed, was "quite meaningful" because:

> "It would be ignoring the facts of life to say that a 71-year old witness will be available, to give his deposition or testimony, at an undeterminable future date when [the pending action] will have been 'determined'...." "[I]t is a fact of life, too, that the memory of events ... grow (sic) dim with the inexorable march of time, even on the part of one on the sunny side of the proverbial three score and ten years."

*Borda*, 383 F.2d at 609.[15]

The court recognizes that *Borda* did not involve a jurisdictional challenge and that there, the defendant, not the plaintiff, wanted to perpetuate the plaintiff's testimony. The court, however, does not find these distinctions to be meaningful. While it is true that defendants in this case have asserted a jurisdictional challenge, the case is currently properly before the court under both its federal question and civil rights jurisdiction. 28 U.S.C. §§ 1332, 1343. Secondly, whether it is the plaintiff or the defendant who wishes to perpetuate his own testimony or that of another party or witness is of no moment if the inability to do so would result, as in this case, in a "failure or delay of justice." *Deiulemar*, 198 F.3d at 486.

## C. *Prejudice to Defendants*

Defendants next argue that, at this stage of the litigation, they are unprepared to effectively cross examine plaintiffs at their depositions, and, therefore, permitting plaintiffs to perpetuate their testimony would be unfair. The court disagrees. In the first instance, the complaint in this case is rich in factual detail. In fact, based on the causes of action and the alleged facts plead in this complaint, defendants succeeded in having the nearly identical complaint dismissed in the state court. Clearly, defendants understand the nature of the allegations against them in this action.

In any event, in order to insure that defendants are not "surprised" by plaintiffs' testimony at their depositions and understand the issues raised in the complaint, the court will require plaintiffs, prior to the depositions, to satisfy all self-executing disclosure requirements, *see* Fed.R.Civ.P. 26(a)(1), to provide defendants with a detailed proffer of the expected testimony of each plaintiff who will be deposed and a copy of each document which plaintiffs expect to rely upon at their depositions, and to afford defendants the opportunity to take a discovery deposition of each plaintiff before the trial depositions. Given these safeguards, the court concludes that defendants will not be "surprised" and, in fact, will be in a position to effectively cross examine plaintiffs at their depositions.

---

happen, would interfere with the court's discharge of these important duties.

**15.** Notably, the Third Circuit cited to *DeWagenknecht v. Stinnes*, 250 F.2d 414 (D.C.Cir.1957), a case involving a request to perpetuate a 74 year old witness' testimony and decided under Rule 27, as authority for granting Texaco's request to depose Mr. Borda.

## D. State Court's Prior Rulings

█ Defendants also point to the state court's denial, on two separate occasions,[16] of plaintiffs' efforts to perpetuate their testimony. Defendants argue, in essence, if this court permits plaintiffs' depositions to proceed, after the state court has denied plaintiffs the opportunity to perpetuate their testimony in the state court action, this court would effectively be "second guessing" the state court's rulings. The court agrees that the administration of justice in our dual federal and state system demands that the federal courts afford utmost respect to the rulings and concerns of the state courts. However, neither the purpose nor the effect of permitting limited discovery in this case is for this court to superintend the business of the state court. In any event, the decisions of a state court on discovery matters in parallel litigation are not binding on this court.[17] Given the risk of catastrophic consequences which may result if the request for discovery is denied, and the minimal friction which allowing the depositions to proceed may create between the federal and state courts, the court is not persuaded that it should follow the state court's lead and deny plaintiffs the opportunity to perpetuate their testimony.

## E. Plaintiffs' Request for a Stay

█ Finally, plaintiffs request a stay of these proceedings, except for perpetuation of their testimony, while they appeal the state trial court's dismissal of the state court complaint. The district court is vested with broad discretion whether to stay a matter on its docket. *Borda*, 383 F.2d at 608 (*quoting Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)). Defendants oppose plaintiffs' request and would like this court to determine with dispatch whether it has jurisdiction to hear plaintiffs' claims. Defendants have requested leave to file an amended motion to dismiss so that they may argue the potential res judicata effect of the state trial court's dismissal of plaintiffs' complaint.

While it appears that notions of judicial economy counsel in favor of waiting for the state appellate courts to review the state trial court's dismissal of plaintiffs' state court complaint which includes the federal causes of action, which presumably would eliminate or at least narrow the issues in this case, given that plaintiffs chose to bring this matter to this court, it is not unreasonable that they should be required, at the very least, to prove at an early point the jurisdiction of this court. Therefore, the court will not stay the litigation at this time.[18]

## III. CONCLUSION

For the reasons set forth above, plaintiffs' motion to stay is denied and plaintiffs' motion for immediate discovery is granted to permit

16. On July 1, 1999, plaintiffs appealed the protective order issued by the state court to the Pennsylvania Superior Court, and on July 20, 1999, plaintiffs filed a motion to stay the protective order pending appeal to allow plaintiffs to take their depositions. The Pennsylvania Superior Court denied plaintiffs' motion to stay the protective order on August 6, 1999. On August 2, 1999, defendants file a motion to quash plaintiffs' appeal of the protective order, arguing the order was interlocutory and not appealable. The Pennsylvania Superior Court granted defendants' motion on September 9, 1999. Later, on November 15, 1999, the state court granted defendants' preliminary objections. Plaintiff appealed that decision to the Pennsylvania Superior Court and filed a petition to take the depositions pending appeal. That request was denied by the state court on December 16, 1999.

17. Because no opinion, in writing or from the bench, memorializes the learned state judge's reasoning in refusing to permit plaintiffs to per-
petuate their testimony in the state court, this court cannot be certain of the basis for the state court's action. A review of the transcript of the state court proceedings shows that at the hearing on defendants' motions for a protective order, Judge Sheppard stated, "I am going to enter a protective order. The protective order will remain in effect until further Order of this Court." (Transcript of June 29, 1999 Hearing, p. 27, Pl.'s Mem., Ex. B). It appears that Judge Sheppard was impressed by defendants' argument that requiring defendants to depose plaintiffs prior to any factual discovery and before the issues have been framed, or even joined, would be unfair. *See* Transcript, p. 10 ("The problem is, to take trial testimony before the issues are framed is not fair. It is that simple.").

18. Of course, this decision is without prejudice to the litigants or the court *sua sponte* revisiting the issue at a later stage in the litigation if warranted under different circumstances.

perpetuation of the testimony of the individual plaintiffs subject to the conditions of full compliance with the self-executing disclosures mandated under the Federal Rules of Civil Procedure, production of a detailed proffer and pertinent documents, and the opportunity for defendants to take a discovery deposition before the depositions to perpetuate testimony are taken in this case.